City of Jacksonville and John L. Hall, as City Tax Assessor, and C. W. Hendley, as City Treasurer and Collector, v. The Glidden Company.

169 So. 216.
Division B.
Opinion Filed June 25, 1936.

*Austin Miller* and *Gov Hutchinson,* for Appellants;

*Rhydon C. Latham* and *Francis D. Wheeler,* for Appellee.

Ellis, P. J.—This is an appeal from an order of the Judge of the Circuit Court for Duval County overruling a motion by the City of Jacksonville and and John L. Hall, as City Tax Assessor, and C. W. Hendry, as Treasurer and Collector of Taxes, to dismiss a bill of complaint exhibited by The Glid-

den Company, a corporation, against the city and its named officers to obtain an injunction against them from collecting taxes upon the lands, buildings, and entire industrial plant located thereon upon the grounds that the Corporation's plant is an industrial plant established in this State after July 1, 1929, and engaged primarily in refining oils.

The basis for the relief sought rests upon Section 12 of Article IX of the Constitution.

The facts alleged are that in February, 1933, the Nelio-Resin Corporation constructed the "plant" upon the land in Jacksonville; that it was completed and put in operation in September, 1933; that about that time the Nelio-Resin Corporation began to engage in the business of "refining of crude turpentine and the production of oil of turpentine, resin and nelio-resin"; that the process is a patented one and the process requires the following operations:

"Crude turpentine gum, which is an olio resinous substance collected from the scarification of pine trees, is dumped into a charging hopper, which is a metal container having a valve in the bottom. From this charging hopper the crude turpentine gum is run into what is known as a melter and filter, then brine, in the approximate amount of three per cent. of the gum, is added thereto and the mixture is then heated and forced out through the top of this container in which is fixed a filtering cloth."

In January, 1936, the Glidden Company acquired all the property of the Nelio-Resin Corporation and is now the owner of the same and is using and operating the plant, equipment, machinery and improvements incident thereto and is refining the crude turpentine and manufacturing the same product in the same manner as described.

The city has assessed the real estate and improvements thereon for the year 1935 on the basis of $1,500.00 value

for real estate and personal property and claims the payment to it of $24.00 taxes.

The Constitution, in Section 12, Article IX, provides as follows:

"Section 12. For a period of fifteen years from the beginning of operation, all industrial plants which shall be established in this State on or after July 1, 1929, engaged primarily during said period in the manufacture of steel vessels, automobile tires, fabrics and textiles, wood pulp, paper, paper bags, fiber board, automobiles, automobile parts, aircraft, aircraft parts, glass and crockery manufacturers and the refining of sugar and oils, and including by-products or derivatives incident to the manufacture of any of the above products, shall be exempt from all taxation, except that no exemption which shall become effective by virtue of this amendment shall extend beyond the year 1948.

"The exemption herein authorized shall not apply to real estate owned and used by such industrial plants except the real estate occupied as the location required to house such industrial plants and the buildings and property situated thereon, together with such lands as may be required for warehouses, storage, trackage and shipping facilities and being used for such purposes."

The Circuit Judge rested his decision and opinion upon the case of City of Jacksonville v. Continental Can Co., 113 Fla. 168, 151 South. Rep. 488.

The rule announced in that case and the reasoning in the opinion are applicable to the conditions existing in this case. In that case we said, after discussing general principles governing the construction of phrases or terms used in a written Constitution, that:

"The words and terms of a Constitution are to be interpreted in their most usual and obvious meaning, unless the text suggests that they have been used in a technical sense.

The presumption is in favor of the natural and popular meaning in which the words are usually understood by the people who have adopted them.

"It has been said that, as statutes are hastily and unskillfully drawn, they need construction to make them sensible, but Constitutions import the utmost discrimination in the use of language, that which words declare is the meaning of the instrument. It must be very plain, nay, absolutely certain, that the people did not intend what the language they had employed in its natural signification imports before a court should feel at liberty to depart from the plain meaning of a constitutional provision. See Newell v. People, 7 N. Y. 9; Gibbons v. Ogden, 9 Wheat. 1, 6 L. Ed. 23.

"In construing the Constitution we are performing a work for the million several hundred thousand people of this State. We should not employ that strict construction used in criminal law, but such a construction which will carry out the real intention of the people in making the instrument through their representatives. To that end the principle applied by the learned chancellor was undoubtedly correct."

In that case we held that the term "vessel" meant "container." In this case the chancellor held that the phrase "refining of sugar and oils" included the manufacture or process of the complainant Company in producing an "oleoresinous liquid" from which oil of turpentine may be separated.

We are of the opinion that there was no error in the Chancellor's decision. Without discussing the scientific process of producing turpentine, or the chemical analysis of it, we do say that it is regarded as an oil within the general understanding of the word and the process adopted by the Company is within the meaning of the term of "refining of sugar and oils."

It was perhaps not the purpose of the amendment to exempt ordinary "turpentine distilleries," as the same are set up and operated on the usual "turpentine farm," but whether there was such purpose in the amendment, the process adopted by the complainant is a patented process requiring certain operations in which much wasted material may be salvaged and a high grade of oil of turpentine produced. Such an industry is, we think, within the meaning of the amendment.

The order of the chancellor is affirmed.

TERRELL and BUFORD, J. J., concur.

BROWN, J., concurs in the opinion and judgment.

WHITFIELD, C. J., and DAVIS, J., dissent.