**CLYDE WILSON, as State Attorney in and for the 12th Judicial Circuit of Florida v. CAROL CREWS, individually and as Constable in and for Justice of the Peace District No. 1, in DeSoto County, Florida.**

34 So. (2nd) 114                                January Term, 1948
February 17, 1948                                        En Banc
Rehearing denied March 12, 1948

170

172

*Halley B. Lewis* and *J. Lewis Hall,* for appellant.

*H. G. Jones,* for appellee.

PARKS, Associate Justice:

In 1931 the County Commissioners of DeSoto County divided it into two Justice of Peace Districts agreeable to the power vested in them by Article 5, Section 21 of the Constitution. The Districts so constituted have remained undisturbed.

Carol Crews, Constable of District No. 1, was reelected at the general election of November 5, 1946, for the ensuing term of four years to begin the first Tuesday after the first Monday in January, 1947. Chapter 23, 249, Special Act of the Legislature of 1945, abolishing all existing Justice Districts conditioned that it be effective upon its approval at referendum by a majority vote of the qualified electors of the County participating, was submitted for their approval at the same election in accordance with its provision and the mandate of the amendment to Article 5, Section 21 of the Constitution adopted at the general election of 1944. The abolishing of the Justice Districts, if effectual, ipso facto, abolished the offices of Constable for the Districts. Article 5, Section 23 of the Constitution.

On December 17th following the election, Crews filed his petition for declaratory judgment (Section 87.01-87.13, Florida Statutes, 1941) praying that the Circuit Court declare Chapter 23249 unconstitutional and void because amended Article 5, Section 21 of the Constitution did not empower the Legislature to abolish all Justice Districts without contemporaneously reestablishing a minimum of two Districts; that the referendum election be declared ineffectual to vitalize the Act because a majority of the electors participating in the election did not vote for its approval; that having been elected for the ensuing term the Court declare him entitled to a Commission. By amendment the County Commissioners and the State's Attorney were made defendants. Separate answers were duly filed by them denying the invalidity of the Act and its alleged failure of approval at the

referendum election and denying that Crews was entitled to a new term of office. Conformance of the proceedings with the requirements of the declaratory judgment act is not questioned.

The Circuit Judge in express term made no disposition of the contention that the Act was not approved by a majority vote in the election. However, it is apparent that his judgment assumed such approval. An examination of the record discloses approval and we so find. He thought that the amendment superseded the provisions of Article 5, Section 21 except its requirement that there be not less than two Districts in the County; consequently the Act purporting to abolish *all* Districts was void and unconstitutional. His judgment so declared and granted the relief prayed. From this judgment the State's Attorney appealed.

The original Article 5, Section 21 of the Constitution reads:

"The County Commissioners of each county shall divide it into as many Justice Districts, not less than two, as they may deem necessary. There shall be elected one Justice of the Peace for each of the said districts. He shall hold his office for four years."

The Legislature at its regular session of 1943 by Senate Joint Resolution No. 419 proposed that Article 5, Section 21 of the Constitution be amended, the Resolution reading:
"BE IT RESOLVED BY THE LEGISLATURE OF THE STATE OF FLORIDA:

"That the following amendment to Section 21 of Article V of the Constitution of the State of Florida be and the same is hereby agreed to, and the same shall be submitted to the qualified electors at the general election in 1944 for ratification or rejection:

" 'Section 21. There shall be not more than five Justice Districts in each county, and there shall be elected one Justice of the Peace for each Justice District, who shall hold office for four years. Existing Justice Districts are hereby recognized, but the Legislature may, by special Act, from time to time change the boundaries of any such District now or here-

after established, and may establish new or abolish any such District now or hereafter existing.'

"Providing however that any such changes shall be submitted to the people of any county so effected, by referendum at the next ensuing general election."

This section and the amendment involve a specific subject matter unrelated to other provisions of the Constitution except Article 5, Section 23, as hereinabove noted. Upon adoption, the amendment became the dominant law of its subject matter. To the extent that the amendment is inconsistent with and repugnant to the original, that provision is modified or superseded. To measure the extent of its repugnancy and inconsistency we must look to and construe together the original and the amendment. The principles of construction of the Constitution and amendment thereto with respect to any change effected by such amendment were clearly expounded by this Court in the following cases, which rather than paraphrase, we rewrite here:

"Where there is a repugnancy between a constitutional amendment and some provision in the original, which cannot be so construed as to have them both stand and leave to each a legitimate office to perform, the original must be deemed to have been repealed by the amendment. . . .

"An amendment of a constitution repeals or changes some provisions in, or adds something to, the instrument amended. Where an amendment is the last expression of the will and intent of the law making power duly exercised, such amendment is controlling, and prior provisions inconsistent with or repugnant to the amendment are modified or superseded to the extent of the inconsistency or repugnancy. While implied repeals or amendments of constitutions or laws are not favored, yet the primary consideration is to give effect to the intent of the lawmaking power as duly expressed, and this should be done even if it results in a repeal or modification of older inconsistent or repugnant provisions. Where an amendment contains no express repeal or modification of existing provisions of law the old and the new provisions should stand and operate together if it can be done without contravening the

intent of the lawmaking power as duly and fairly expressed in the later provision; but to the extent that a fair construction or interpretation of the new provision discloses inconsistency with, or repugnancy to an older provision, the later provision controls to effectuate the law making intent. . . . "

Board of Public Instructions of Polk County v. Board of County Commissioners of Polk County, 58 Fla. 391; 50 So. 574.

"Implied repeals, amendments and modifications of organic provisions occur only when the provisions as adopted are positively and irreconcilably repugnant to each other, and then only to the extent of the repugnancy. . . . District provisions of the constitution are repugnant to each other only when they relate to the same subject, are adopted for the same purpose and cannot be enforced without material and substantial conflict. . . . "—T. F. West v. J. Turner Butler, 70 Fla. 102; 69 So. 771.

The companionate principle of construction to ascertain the meaning of the language employed in the Constitution and amendment was enunciated by this Court in City of Jacksonville v. Glidden Co., 124 Fla. 690; 169 So. 216.

"The words and terms of a Constitution are to be interpreted in their most usual and obvious meaning, unless the text suggests that they have been used in a technical sense. The presumption is in favor of the natural and popular meaning in which the words are usually understood by the people who have adopted them.

"It has been said that, as statutes are hastily and unskillfully drawn, they need construction to make them sensible, but Constitutions import the utmost discrimination in the use of language, that which the words declare is the meaning of the instrument. It must be very plain, nay, absolutely certain, that the people did not intend what the language they had employed in its natural signification imports before a court should feel at liberty to depart from the plain meaning of a constitutional provision. . . . "

In the light of these principles of construction we must decide the effect the amendment had on the original provisions of Article 5, Section 21.

The language of the amendment "There shall be not more than five Justice Districts in each county" expressly fixed the maximum number of districts permitted, but did not fix a minimum number. The expression "not more than five" as used here means beyond or in excess of five. It does not within itself cannote any requirement of a minimum number, nor is there anything in the context of the amendment implying that there shall be a minimum number. This language does not require the existence of any District. Such provision is, therefore, repugnant to and inconsistent with the original provision that the County Commissioners "shall divide it into as many Justice Districts, not less than two." This meaning becomes more apparent when construed with the succeeding language of the context vesting in the Legislature the power to establish or abolish any or all Districts and change their boundaries.

The language of the clause "and there shall be elected one Justice of the Peace for each Justice District, who shall hold office for four years" is identical in meaning with that of the original provision and, as will be seen, is the sole provision of the amendment consistent with the original. The clause "Existing Justice Districts are hereby recognized" is no more than a formal acknowledgment and approval of all Districts and their boundaries as constituted on the date the amendment was adopted. No intention to inhibit the abolishing of any Districts existing on that date or changing their boundaries may be implied from this language.

The language "but the Legislature may, by Special Act, from time to time change the boundaries of any such District now or hereafter established, and may establish new or abolish any such District now or hereafter existing" means that the Legislature shall have the power to establish new or abolish Districts and change their boundaries by Special Act; "from time to time" means that such Act may be passed at any time while the Legislature is in session; "change the boundaries of any such District now or hereafter established" includes the boundaries of all Districts as constituted at the date the amendment was adopted or thereafter established by the Legislature under its authority; the word "any" as

used in the context of "any such District now or hereafter established" and "any such District now or hereafter existing" means one or all, one or more, indiscriminately of the total number; the words "now or hereafter" include those Districts existing at the time of the adoption of the amendment, as well as those established thereafter by the Legislature, and likewise include the boundaries of such Districts. This phrase excludes the thought that the power of the Legislature to change the number of Districts or District boundaries is limited to those established after the adoption of the amendment.

Under the amendment, so construed, the County Commissioners were divested of all express power to divide the County into Districts, as well as the implied power to establish, abolish or change the boundaries of Districts, generally exercised by them prior to the adoption of the amendment. The provisions of the amendment expressly vested the exclusive power in the Legislature to establish or abolish Districts and change their boundaries, subject however to the approval of the people at referendum. To hold that the Commissioners and the Legislature have concurrent power to establish new or abolish old Districts or change boundaries, whether such Districts existed at the time of or formed after the adoption of the amendment, or that the Commissioners continued to retain power to divide the County into at least two or more Districts and fix or change their boundaries, would inevitably, in practice, lead to a struggle between the Commissioners and the Legislature relative to the exercise of such power. A construction so permitting the attendant confusion and impairment of the stability of Districts and their boundaries is to be avoided as not being the intent of the amendment.

Viewing the interrelated provisions in perspective, the changes in the provisions of Article 5, Section 21 wrought by the amendment clearly evince the intent to completely revise the fundamental law governing the establishment of Justice Districts and the fixing of their boundaries.

The over-all effect of these changes is to vest in the Legislature the exclusive power to determine by Special Act at any

time either that there be no District in the County or divide it into and establish any number of Districts not to exceed the prescribed maximum of five; to fix or change boundaries of or abolish any District existing in the County at the time of passage of the required Special Act, whether such Districts have been established prior or subsequent to the adoption of the amendment; that the method to be employed by the Legislature shall be by Special Act which may be enacted at any time while it is in session and such Act may include one or all, one or more, indiscriminately of the total number of Districts, to become effective upon its approval by a majority of the electors participating in a referendum at the ensuing general election.

In this view the field of operation of the provisions of Article 5, Section 21 is preempted by the provisions of the amendment and it must be held that such amendment supersedes the original. Under the amendment the Legislative power and the power of the people to approve at referendum is constant and may be exercised recurrently. Chapter 23249 is a valid and constitutional enactment. The cause is reversed.

THOMAS, C. J., ADAMS, SEBRING and BARNS, JJ., concur.

TERRELL and CHAPMAN, JJ., dissent.

TERRELL, J., dissenting:

I think the judgment appealed from should be affirmed. As originally embraced in the constitution of 1885, Section 21 of Article V read as follows:

"The County Commissioners of each county shall divide it into as many Justice Districts, not less than two, as they may deem necessary. There shall be elected one Justice of the Peace for each of the said districts. He shall hold his office for four years."

As amended in 1944, Section 21 of Article V reads as follows:

"There shall be not more than five Justice Districts in each county, and there shall be elected one Justice of the Peace for each Justice District, who shall hold office for four years. Existing Justice Districts are hereby recognized, but the

Legislature may, by special Act, from time to time change the boundaries of any such District now or hereafter established, and may establish new or abolish any such District now or hereafter existing. Provided however, that any such changes shall be submitted to the people of any county so affected, by referendum at the next ensuing general election."

Casual inspection discloses that original Section 21, Article V. authorized the County Commissioners to divide each county into "as many Justice Districts, not less than two, as they may deem necessary." By the 1944 amendment the maximum number of Justice Districts was fixed at five but the minimum was not changed. The 1944 amendment specifically recognized "existing districts" and gave the legislature power to "change the boundaries of *any such* district now or hereafter established, and may establish new or abolish *any such* district now or hereafter existing," but there is not a word in the amendment withdrawing from the County Commissioners power to divide the County into Justice Districts.

The majority opinion reads this power out of the constitution by implication. The rule is well settled that repeals by implication are not favored. Here this rule is supported by the fact that the County Commissioners have for more than sixty years been clothed with the power to divide the County into Justice Districts. It is the place where such power logically resides, and there is not a word in the 1944 amendment that can be reasonably construed as withdrawing that power from them. The resolution adopted by legislature submitting the 1944 amendment to the electorate speaks of it as an "amendment" and not as a substitute for the original. The General practice in submitting constitutional amendments to the people by the legislature, is to use the word "amend" or "amended" when nothing more is intended, but when the purpose is to repeal or substitute a new or different provision for the old, then the word "repeal" and "substitute for" or words to that effect are employed. There is no showing whatever to do more than amend here.

When the 1944 amendment in terms recognized "existing Justice Districts," it could have reference to none other than those created by the County Commissioners, and when it was

180

authorized to change the boundaries of "such" districts and to establish new, or abolish any "such district, it could have reference to none other than those created by the County Commissioners. In construing amendments to a statute or the constitution, Courts are without power to strike down the original instrument by implication unless the terms of the amendment are the direct antithesis of the original instrument, or are so opposed to it in meaning, that they cannot be reconciled on any reasonable basis. Since the resolution purported to do nothing more than amend, there certainly should be positive showing of an intent to strike down a provision, the import of the one stricken here.

I think the majority opinion ignores this cardinal rule of interpretation and in doing so, reads out of the constitution by implication a power vested in the County Commissioners that was not contemplated by the people.

I think the chancellor's conclusion was correct and should be affirmed. I therefore dissent.

CHAPMAN, J., concurs.