QUESTION: Do the provisions of s. 105.021, F.S., relating to nonpartisan judicial elections, conflict with Art. VI, s. 5, State Const.?
SUMMARY: The provisions of s. 105.021, F.S., providing for the nonpartisan election of judicial officers, were preserved by s. 20(b) of revised Article V, State Const., and take precedence over Art. VI, s. 5, id., relating generally to the election of state and county officers to the extent of any inconsistency therewith. Article VI, s. 5, as revised in 1968, provides generally for elections to fill state and county offices. It reads as follows: A general election shall be held in each county on the first Tuesday after the first Monday in November of each even-numbered year to choose a successor to each elective state and county officer whose term will expire before the next general election and, except as provided herein, to fill each vacancy in elective office for the unexpired portion of the term. Special elections and referenda shall be held as provided by law. Article V — the judiciary article — had been revised in 1956 to provide for district courts of appeal and was left untouched by the 1968 revision of the constitution. As revised in 1956, Article V spoke to the filling of vacancies in judicial office, Art. V, s. 14, and provided in s. 15, id., that circuit judges, judges of district courts of appeal, and justices of the Supreme Court should be elected by the qualified electors of the circuit, the district, or the state, respectively, "as other state and county officials are elected." And in 1968, candidates for judicial office were still nominated by their respective political parties and elected on a partisan basis, as were other state and county officers. However, in 1971, the Legislature adopted the nonpartisan form of election of judges, see Ch. 71-49, Laws of Florida (ss. 105.011- 105.10, F.S.), providing among others that judges should be elected on separate nonpartisan ballots at first and second nonpartisan elections to be held at the time of the first and second primary elections provided by law, ss. 100.061 and 100.091, F.S. The 1971 nonpartisan judicial election law went into effect on May 24, 1971, and was in full force and effect at the time the 1972 revision of Article V was adopted by the Legislature (S.J.R. 52-D) on December 11, 1971, and by the voters at a special election held on March 14, 1972. As revised in 1972, Article V deleted the provision of Art. V, s. 15, State Const. 1885, quoted above — that justices and judges should be elected "as other state and county officials are elected" — and provided merely that all justices and judges shall be elected by vote of the qualified electors within the territorial jurisdiction of their respective courts. See s. 10(a), revised Article V. The "schedule" provision of revised Article V authorized the Legislature at its 1972 Session to create additional judgeships, the terms of which should begin upon the effective date of the article (January 1, 1973), and provided that the elections to such offices "shall take place at the same time and manner as election to other state judicial offices in 1972." (Emphasis supplied.) See s. 20(d)(6), revised Article V. Similarly, s. 20(d)(2), id., provided that elections to circuit court judgeships whose terms would expire in 1973 "shall take place at the same time and manner as elections to other state judicial offices in 1972. . . ." (Emphasis supplied.) And it is noteworthy that the nonpartisan judicial election law, supra, is applicable in terms to "judicial officers" and "judicial offices" as therein defined, including circuit and county court judges. See s. 105.011, F.S. Finally, s. 20(b) of revised Article V provided that: Except to the extent inconsistent with the provisions of this article, all provisions of law and rules of court in force on the effective date of this article shall continue in effect until superseded in the manner authorized by the constitution. (Emphasis supplied.) The Legislature presumably acts with full knowledge of existing statutes relating to the same subject. Tamiami Trail Tours v. Lee, 194 So. 305 (Fla. 1940); Collins Inv. Co. v. Metropolitan Dade County, 164 So.2d 806 (Fla. 1964). Similarly, the voters of this state, in adopting revised Article V on March 14, 1972, must have been aware that the judicial officers referred to therein would be elected at the nonpartisan judicial elections to be held in September of 1972, as provided by existing law, s. 105.021, F.S. See State ex rel. McKay v. Keller, 191 So. 542
(Fla. 1939), in which the court said that the "spirit" of the Constitution — its intent and purpose — . . . may be found in those implications and intendments which clearly flow from the express mandates of the Constitution when considered in the light of circumstances and historical events leading up to its adoption. The fundamental object in construing the Constitution is to ascertain the intent of its adopters and to give effect to the object sought to be attained by them. First Nat. Bank of Melbourne v. Berg, 153 So.2d 331 (2 D.C.A. Fla., 1963); Gray v. Bryant,125 So.2d 846 (Fla. 1960). The courts must assume that every sentence of a constitution is designed to have some effect, Miami Shores Village v. Cowart, 108 So.2d 468 (Fla. 1959); and the omission of a word in an amendment or reenactment of a constitutional provision — such as the omission of the phrase "as other state and county officials are elected" — must be presumed to have been intentional. In re Advisory Opinion, 112 So.2d 843 (Fla. 1959). The references to the election of state judicial officers in 1972, and the omission of the requirement that justices and judges be elected "as other state and county officials are elected," are consistent with an intention to make a distinction between the election of judicial officers and other state and county officers; and the express preservation of existing laws not inconsistent with Article V — which would, of course, include the nonpartisan judicial election law — confirms the intent of the framers of revised Article V and the voters in adopting that article in this respect. Thus, even if it be assumed arguendo that the authority of the Legislature to adopt the nonpartisan plan for the selection of justices and judges early in 1971 was questionable, it would appear that the framers of revised Article V late in 1971 — and the people who adopted it in 1972 — were cognizant of the provisions of ss. 105.011 and 105.021, F.S., providing for nonpartisan elections of judicial officers; and that in adopting ss. 10(a) and 20(d)(6) and (2) of revised Article V, supra, they intended to refer to the judicial officers and judicial elections provided for by Ch. 105, F.S., and to carry forward these provisions of existing law relating to the nonpartisan selection of justices and judges. As the latest expression with respect to this particular facet of our elective process, the intent evidenced by the 1972 revision of Article V must take precedence over any contrary expression contained in the existing constitutional provision relating generally to the election of state and county officers, to the extent of any inconsistency therewith. Sylvester v. Tindall, 18 So.2d 892 (Fla. 1944); Wilson v. Crews, 34 So.2d 114 (Fla. 1948). Your question is, therefore, answered in the negative.