Gerald Holley County Attorney Holmes and Washington Counties Chipley
QUESTIONS:
1. Can the surplus second gas tax funds be used for the purchase of road equipment?
2. Does resurfacing or widening of a road constitute new construction or maintenance under the provisions of s. 9(c)(5), Art. XII, State Const., and s. 206.47(7), F. S.?
3. Does the fact that the county has bonded the surplus second gas tax and will receive several years' money in a large sum affect the use of that money, and can the money be used for the acquisition of right-of-way?
SUMMARY:
Surplus second gas tax funds returned to the county may not be used for the purchase of road machinery, such funds being restricted to the acquisition and construction of roads. Resurfacing of existing roads is statutorily treated as maintenance, not new construction, and surplus second gas tax funds may not be used to resurface existing roads. New construction of roads may or may not include the widening of an existing highway with the use of second gas tax funds; that is a mixed question of law and fact and must be decided on a case-by-case basis by the courts. Unless the second gas tax funds received by a county have been pledged to the payment of bonds, any surplus of such funds may be used by a county in the purchase of right-of-way for future road construction.
The fifth-cent and sixth-cent motor fuel tax, or second gas tax, was originally levied by s. 16, Art. IX, State Const. 1885. See s.206.41(4)(b), F.S. Section 16(c), Art. IX of the 1885 Constitution governed the priorities as to the expenditure of the second gas tax funds and charged the State Board of Administration with the responsibility of using these funds, first, to pay principal and interest on any bonds or fuel tax anticipation certificates issued pursuant to s. 16, Art. IX; second, to establish a sinking fund to meet future requirements of such bonds and fuel tax anticipation certificates when it appeared that anticipated future income would not equal the scheduled payments; and, third, to remit any remaining balance in the fund on the basis of 80 percent to the State Road Department for, in part, the `construction or reconstruction' of state `roads or bridges' within the county and 20 percent to the appropriate county commission `for use on roads or bridges therein.'
The levy of the second gas tax was continued by s. 9(c), Art. XII of the 1968 revision of the Constitution, which substantially revised the expenditure priorities of s. 16, Art. IX, State Const. 1885. Under s. 9(c)(5), Art. XII, State Const., the State Board of Administration is required to remit the proceeds of the second gas tax allocated to each county's account, for use in such county, on the basis of 80 percent to the Department of Transportation, the state agency which supervises the state road system, and 20 percent to the governing body of each county. The percentage allocated to the county may be increased by general law. Such proceeds of the second gas tax, subject to allocation under s. 9(c)(5), must be utilized exclusively for the following three priorities.
 . . . payment of obligations pledging revenues allocated pursuant to Article IX, Section 16 of the Constitution of 1885, as amended, and any refundings thereof . . . payment of debt service on bonds issued as provided [by s. 9(c)(5)] to finance the acquisition and construction of roads as defined by law, and . . . the acquisition and construction of roads. (Emphasis supplied.)
`Road' is defined by s. 334.03(7), F. S., to include, among other things, `highways, and other ways open to travel by the public, including the roadbed, right-of-way . . . necessary for the maintenance of travel . . . .' Subsections (16), (17), (21), and (23) of s. 334.03 define, respectively, collector roads, local roads, urban minor arterial roads, and county road systems.
It is clear from reading the above priorities that second gas tax funds remaining after satisfaction of priority one, relative to obligations incurred under the 1885 Constitution and refundings thereof, must be expended only for the `acquisition and construction of roads,' as defined in s. 334.03, F. S., either by payment of debt service on bonds under priority two or by expenditures under priority three.
Section 206.47(7), F. S., also limits the expenditure of surplus second gas tax funds to the `acquisition and construction of roads' and provides in part as follows:
 . . . The remaining gas tax funds credited to each county are surplus gas tax funds and shall be divided, 80 percent to the Department of Transportation and 20 percent to the Board of County Commissioners of the County for the acquisition and construction of roads. (Emphasis supplied.)
AS TO QUESTION 1:
Your first question concerns whether the surplus of the second gas tax may be used for the purchase of `road equipment.' Section 9(c)(5), Art. XII, State Const., and s. 206.47(7), F. S., make no reference to road equipment or other operating capital outlays but restrict the use of second gas tax funds to the `acquisition and construction of roads.' The use of the terminology `acquisition and construction of roads' indicates an intent to limit the surplus second gas tax funds to fixed capital outlays or expenditures for long-term capital improvements or projects which will last for an indefinite period rather than short-term expenditures for the purchase of equipment or operating capital outlays or other current operational expenses.
Under the well-established rule of construction, expressio uniusest exclusio alterius, the express mention of one or more things implies the exclusion of all others, and when the Constitution or a statute expressly enumerates the things upon which it is to operate, it is to be construed as excluding from its operation all things not expressly mentioned. Ideal Farms Drainage Dist. v. Certain Lands, 19 So.2d 234 (Fla. 1944); Interlachen Lakes Estates, Inc. v. Snyder, 304 So.2d 433 (Fla. 1973); and In Re
Advisory Opinion of Governor Civil Rights, 306 So.2d 520 (Fla. 1975). Thus, the acquisition and construction of capital projects such as roads, as contemplated by s. 9(c)(5), Art. XII, State Const., and s. 206.47(7), F. S., do not include the acquisition or purchase of road equipment.
Nor should the provisions of s. 206.47(10), F. S., be construed to allow the expenditure of surplus second gas tax funds for the purchase of road equipment. Section 206.47(10), originally enacted by Ch. 69-304, Laws of Florida, following adoption of the Revised Constitution of 1968, provides for distribution of the remaining 20 percent surplus gas tax funds to the board of county commissioners `for use in the county.' However, s. 9(c)(5), Art. XII, State Const., specifies that the proceeds of the second gas tax subject to allocation to the several counties under s. 9(c)(5) shall be used, among other things, `for the acquisition and construction of roads.' Thus, in order to preserve the constitutionality of s. 206.47(10), I must construe s. 206.47(10) to meant that the remaining 20 percent surplus gas funds be `use(d) in the county' to `finance the acquisition and construction of roads as defined by law' or `for the acquisition and construction of roads' as limited and prescribed by s. 9(c)(5), Art. XII, State Const. Cf. s. 206.47(7), providing in pertinent part: `20 percent to the (county commission) for the acquisition and construction of roads.'
Therefore, unless and until judicially determined to the contrary, I am compelled to conclude that surplus second gas tax funds may not be used to purchase road equipment.
AS TO QUESTION 2:
In the construction of constitutional provisions, the words and terms utilized are given their usual and obvious meaning unless the text suggests to the contrary. City of Jacksonville v. Glidden Company, 169 So. 216 (Fla. 1936). This principle also applies to the construction of statutory provisions. Pedersen v. Green,105 So.2d 1 (Fla. 1958).
In Black's Law Dictionary (4th Rev. ed. 1968), the term `construction' is defined as, among other things, `the creation of something new, as distinguished from the repair or improvement of something already existing.' 16A C.J.S. Construction, p. 1234, defines the term to mean the building or erecting of something which theretofore did not exist, the creation of something new rather than the repair or improvement of something already existing. See also Board of Sup'rs of Covington County v. State Highway Commission, 194 So. 743 (Miss. 1940), stating that the word `construction,' in its ordinary sense, means to build or erect something which therefore did not exist. It is therefore my opinion that, in the sense the word `construction' is used in s.206.47(7), F. S., and in s. 9(c)(5), Art. XII, State Const., the term means the creation or building of new roads and does not encompass the resurfacing, repair, or improvement of an existing road.
Pursuant to s. 334.03(26), F. S., the `mineral sealing or resurfacing of lengthy sections of roadway' is included within the definition of `periodic maintenance' which is defined to mean `[a]ctivities which are large in scope and require a major work effort to restore deteriorated components of the transportation syste to a safe and serviceable condition . . . .' The resurfacing of existing roads is therefore treated by the Legislature as maintenance, rather than new construction. Thus, surplus second gas tax funds should not be used to resurface existing roads.
Regarding whether widening of an existing road constitutes new construction or maintenance, 94 C.J.S. Widen, p. 616, defines the word `widen' in its ordinary sense to mean `to increase in width; to extend.' Black's Law Dictionary (4th Rev. ed. 1968), p. 1770, contains the identical definition.
As noted above, the term `construction,' as used in s. 206.47(7), F. S., and in s. 9(c)(5), Art. XII, State Const., means the creation or building of new roads and does not encompass the resurfacing, repair, or improvement of an existing road. The term `maintenance' is treated by the Legislature as `routine maintenance' and `periodic maintenance' under the definitional provisions of s. 334.03(25) and (26), F. S. Routine maintenance is defined under s. 334.03(25) as
 [p]avement patching, shoulder repair, cleaning and repair of drainage ditches and structures, mowing, bridge inspection and maintenance, pavement striping, litter cleanup, and such other similar activities of minor scope as are necessary to maintain a safe and efficient transportation system.
Periodic maintenance is defined under s. 334.03(26) as those `[a]ctivities which are large in scope and require a major work effort to restore deteriorated components of the transportation system to a safe and serviceable condition . . . .' While this statute defines `periodic maintenance' to include certain major repairs and the resurfacing of lengthy sections of roadway, it expressly provides that it is not limited to the activities listed therein.
Thus, whether the widening of an existing road or a part thereof constitutes routine or periodic maintenance, as defined by the Legislature, or the construction of a new road within the meaning of the language `acquisition and construction of roads,' as used in s. 9(c)(5), Art. XII, State Const., and s. 206.47(7), F. S., is a mixed question of law and fact, beyond my authority to adjudicate or decide and must be determined on a case-by-case basis by the courts. Therefore, I am unable to categorically state whether the mere widening of an existing road or a part thereof would constitute `construction' within the meaning of the words `acquisition and construction' as used in the above-stated constitutional and statutory provisions.
It should be noted that in Anderson v. City of North Miami Beach,99 So.2d 861 (Fla. 1958), the court held in part that under s.170.01, F. S., which authorized a municipality to levy special assessments for the `construction' and `paving' of streets, a municipality had implicit authority to widen pavement and to assess property especially benefited thereby, notwithstanding that the word `widen' was not used in the statute. The court reasoned that to adopt the opposite view would mean that, once a municipality had constructed and paved a street and completed the street of a given width, the municipality would have exhausted its authority as to selection of width of the street and would therefore be confined to repairing and repaving the width first constructed. No such statutory provisions and considerations present in the Anderson case, supra, are involved in the instant case, however, and the constitutional limitations on the expenditure of particular tax revenues applicable to the questions you have raised were not involved in the Anderson decision, supra.
AS TO QUESTION 3:
When the surplus second gas tax funds have been pledged as security for, or in payment of, a bond issue pursuant to constitutional authority, the county may not use or expend such second gas tax funds in a manner which would violate or impair the bond contract, the Constitution, or any applicable statutes, nor can the bond proceeds be diverted from the purpose for which the bonds were issued and sold. Otherwise, the use of second gas tax funds is governed by s. 9(c)(5), Art. XII, State Const., and s.206.47, F. S. (for the acquisition and construction of roads), which authorized uses would not be affected by the source of such receipts or the manner in which the funds are received. Therefore, receipt of several years of revenue from the second gas tax (derived from bonds) in a lump sum will not affect its use, provided the bond contract is not violated or otherwise impaired or the constitutional and statutory mandates violated.
As to whether the proceeds of the bonds secured by the surplus second gas tax receipts may be used for the acquisition of right-of-way, it is apparent that the acquisition of right-of-way is an essential component of highway construction. Indeed, the Florida Transportation Code (Chs. 334-339, F. S.) defines the term `road' to include the `roadbed' and `right-of-way.' See s.334.03(7). Furthermore, the term `right-of-way' is defined in s.334.03(9) to mean `[l]and in which the state, the department, a county or a municipality owns the fee or has an easement devoted to or required for the use as a public road.' Accordingly, it is my opinion that the acquisition of a `right-of-way' for a county road which is a part of the county road system, as defined by s.334.03(23), would be a legitimate item for expenditure of surplus second gas tax funds.
To summarize, it is my opinion that surplus second gas tax funds may not be used to purchase road equipment. In the sense the word `construction' is used in s. 9(c)(5), Art. XII, State Const., and in s. 206.47(7), F. S., the term means the creation or building of new roads and does not encompass the resurfacing, repair, or improvement of existing roads. Resurfacing of existing roads is statutorily treated as maintenance, not new construction, and surplus second gas tax funds may not be used to resurface existing roads. Whether the widening of an existing road or a part thereof constitutes maintenance, as statutorily defined, or construction of a new road within the meaning of s. 9(c)(5), Art. XII, State Const., and s. 206.47(7), limiting the use of surplus second gas tax funds to the `acquisition and construction of roads,' is a mixed question of law and fact beyond the authority of the office of the Attorney General to decide and must be determined by the courts on a case-by-case basis. Proceeds of bonds secured by pledge of surplus second gas tax funds may not be used for purposes violative of constitutional and statutory limitations or that impair the bond contract. The bond proceeds may not be diverted from the purposes for which the bonds were issued and sold. Authorized uses of such proceeds are not affected by the source from which derived. The proceeds of such bonds may be used for the acquisition of a right-of-way, as defined by s. 334.03(9), F. S., for a county road, as defined by s. 334.03(7), which is a part of a county road system, as defined by s. 334.03(23).
Prepared by:
Cecil L. Davis, Jr. Assistant Attorney General