COPE, Judge
(dissenting).
I respectfully dissent.
The County’s 1987 ordinance contravenes any fair interpretation of the 1986 amendment to the Dade County Charter. The 1987 ordinance effectively disenfranchises the residents of the Fire and Rescue Service District. I would affirm the trial court’s judgment with respect to section 18-33 of the Dade County Code. For reasons differing from the majority position, I would reverse as to section 18-27 of the Code.
I.
In order to understand the question presented here, it is essential to understand who participates in the Metro-Dade Fire and Rescue Service District (“the District”) and what were the circumstances of its operation in the period 1980-86.
The District was created by ordinance in 1980.[1] According to the ordinance, “[t]he service provided by the District shall include a uniform level of fire and rescue service throughout the District.” Dade County Code § 18-26.
As indicated in the Preamble, the 1980 ordinance was the result of a professional study conducted by Price, Waterhouse and Co. That study revealed that residents of the unincorporated areas were paying more for fire and rescue services than they were receiving in benefits; that residents of some municipalities were paying county taxes without receiving fire and rescue services at all; and that residents of some municipalities were paying less than their pro rata share for the county services received. Accordingly, the County Commis *925 sion determined “that a fire and rescue service district will provide a fair, equitable and uniform mechanism for the delivery and funding of fire and rescue services throughout Dade County_” Ord. no. 80-86, Preamble, see appendix.
Under the terms of the 1980 ordinance, cities were allowed to continue providing their own fire and rescue service if they so chose. Such cities were allowed to opt out of participation in the District. Four of the largest cities, Miami, Miami Beach, Coral Gables, and Hialeah, elected to do so.
As a result, and contrary to popular impression, the District by no means covers all of Dade County. Instead, the District covers sixty-five percent of Dade’s population, as follows:
[[Image here]]
National Data Consultants, Florida County Perspectives 79, 80, 86 (1991) (1990 United States Census data). From the outset, therefore, there was a significant difference between the population of the District and the population of the County at large.
As an original proposition, it would seem reasonable to expect that in a special taxing district, the level of taxation would be set by those residing within the district. As of 1980, however, the Dade County Home Rule Charter required that for all County-created special purpose districts, the County Commission must serve as the “governing body.” Dade County Home Rule Charter § 1.01(A)(11) (1980). Accordingly, the Board of County Commissioners, elected at large county-wide, was designated to serve as the governing body.
The next significant fact for our purposes is that the District went into operation during the period 1980-86. The record before us is extraordinarily sparse about the exact functions carried out by the County Commission as “governing body” during that period. It is clear that the District levied taxes for fire and rescue services as had been contemplated. It is also reasonably clear, as the majority says, that the fire and rescue service continued to operate under the direction of the County Manager within the ordinary county administrative system. That is the conclusion drawn by the majority and I have no reason to quarrel with it.
Next came the events at the heart of the present controversy. In 1986 there was another referendum pertaining to the Fire and Rescue Service District. This time it took the form. of a charter amendment, which was approved by the voters.
The 1986 amendment had two key points: [clause 1]: “the Board of County Commissioners shall not be the governing body of the Metro-Dade Fire and Rescue Service District_”
[clause 2]: “said Fire and Rescue Service District shall be governed by five members elected ... by the registered voters of the ... District.”
Dade County Charter § 1.01(A)(11) (1986) (emphasis added).[2]
*926 The amendment could not be clearer. The 1986 amendment required the transfer of the “governing body” responsibilities from the County Commission to a Fire and Rescue Service Board which would be elected by the residents of the Service District itself. Where the pre-1986 system was subject to the venerable complaint of taxation without representation, the 1986 amendment would eliminate any such complaint by creating an elected body responsible to the citizens of the district. The intent of the 1986 vote was to shift to the Fire and Rescue Service Board the “governing body” powers, notably the power to set the millage rate and thereby to prescribe the level of service, which had theretofore been performed by the County Commission sitting in its capacity as “governing body” of the Fire and Rescue Service District.[3]
After the 1986 vote it became the duty of the County Commission to take action to implement the charter amendment. In 1987 the Commission enacted ordinance 87-32, which created the five-member elected Board. Subsequently, elections were held and the Fire and Rescue Service Board is now serving.
The 1987 ordinance also amended the Dade County Code to provide that the new elected Board would serve as the governing body of the District in place of the County Commission. See Dade County Code § 18-27 (as amended 1987). That designation turned out to be mere window-dressing because another provision of the ordinance took away all of the powers of the Board as the governing body. The ordinance provided:
Sec. 18-33. Powers of the governing body.
The governing body shall have the following duties, functions and responsibilities:
(a) To make recommendations concerning all matters relating to the provision of fire and rescue services, and to make periodic reports and recommendations in respect to such matters.
(b) To make a continuing study of the existing fire and rescue services within the district and the future needs of the district.
(c) To formulate plans and programs for the coordination of the activities of the district with the fire and rescue services provided by other governmental units within the county and in neighboring counties.
(d) To make a continuing study and periodic reports and recommendations for a sound, feasible program for financing the costs of improving existing fire and rescue facilities and services and providing additional fire and rescue services and facilities.
(e) To perform and carry out such other duties and functions as may be assigned by the county commission.
(f) To sue and be sued.
The governing body shall have no power or authority to commit the county government to any policies or to incur any financial obligation or to create any liability on the part of the county or district. No actions or recommendations of this board shall be binding upon either *927 the county or the district until approved or adopted by the county commission.
Dade County Code § 18-33 (as amended in 1987) (emphasis added).
The final paragraph of section 18-33 is the crucial one, for it expressly decrees that the “governing body” — the new, elected Board — has no power to take any action “until approved or adopted by the county commission.” Id.
This was a blatant arrogation of power. What the voters gave to the District in 1986 the County Commission took back in 1987. The Commission conferred on itself all final decision-making power on all matters. This ordinance holds that no actions by the Board will bind “either the county or the district until approved or adopted by the county commission.” Id. (emphasis added).
The trial court correctly perceived that the 1987 ordinance is but a semantic game. No effort was made in the 1987 ordinance to identify, and transfer, those “governing body” functions carried out by the County Commission during the 1980-86 period. No effort was made to define the term “governing body” in the ordinance so as to have the same meaning as the term “governing body” when used in paragraph 1.01(A)(11) of the Home Rule Charter. Where, as here, the County Commission reserves to itself all decision-making power, it is abundantly clear that the County Commission has retained in its own hands the “governing body” functions that the electorate told it to relinquish.
The Fire and Rescue Service District brought suit to challenge the 1987 ordinance. The trial court ruled, I think entirely correctly, that the ordinance facially violates the 1986 charter amendment. That conclusion was not only sound, but inescapable.
II.
The County says that it had full authority to enact the 1987 ordinance because the Charter designates the County Commission as “the legislative and the governing body of the County....” Dade County Charter § 1.01(A). The County used its legislative powers to enact the initial ordinance creating the Fire and Rescue Service District. The County argues, quite simply, that since it had the legislative power to create the district, and admittedly has the legislative power to abolish the district, it follows that the County Commission also has the lesser included power to legislate with respect to the District in any way that the Commission sees fit.
The County presents its position as immutable truth, but it is only half-true. It is certainly true that the County Commission is the legislative body for the County, and that it has broad legislative powers. It is also true that those legislative powers include the power to legislate with respect to the District. What the County omits to acknowledge, however, is that its legislative powers are limited by the Charter itself. The County can legislate, but it cannot legislate contrary to the express terms of the Charter. Once the Charter was amended in 1986, the voters — who outrank the County Commission — wrote into the Charter the requirement that the Fire and Rescue Service Board be the governing body of the District. That requirement is not only part of the Charter, but it is part of, and a limitation on, the very same section 1.01 which is the source of the County Commission’s legislative power. Where the Charter says that the Fire and Rescue Service Board shall be the governing body of the District, the County Commission cannot legislate otherwise.[4]
*928 But, the argument goes, the term “governing body” does not have any fixed or inherent meaning. Thus, the County argues, the Commission must use its legislative powers to define the powers and prerogatives of the Pire and Rescue Service Board. That being so, the County Commission can legislate so as to define the powers of the Board in any way the County Commission chooses.
This is, of course, simply a restatement of the same argument. Through the charter amendment, the voters designated the Board as the governing body of the District. The 1986 referendum was an exercise of constitutional power by the voters, which power is superior to the legislative power of the County Commission. In the last analysis it is the role of the judiciary to interpret the Charter’s phrase, “governing body,” and in my view the trial court interpreted it correctly.
The term “governing body” is a generic term which has long been in the Charter. Id. § 1.01(A)(11). The Charter applies that term to all special purpose districts, and not uniquely to the Fire and Rescue Service District. Id. The Charter does not itself contain a definition of the term, and the trial court correctly ruled that the term “governing body” must be given its usual and obvious meaning. See City of Jacksonville v. Glidden Co., 124 Fla. 690, 169 So. 216, 217 (1936); Seaboard System R.R., Inc. v. Clemente, 467 So.2d 348, 355 (Fla. 3d DCA 1985).
Under a standard definition, the “[g]ov-eming body of [an] institution, organization or territory means that body which has ultimate power to determine its policies and control its activities.” Black’s Law Dictionary 625 (5th ed. 1979) (citation omitted). Similarly, “govern” means “to direct and control, rule, or regulate, by authority.” Id.
Standard definitions supply a useful beginning point, but they need not be the sole point of reference. In the present case the County Commission served as the governing body of the District from 1980 onward. There is thus a known universe of activity conducted by the County Commission wearing its “governing body” hat during the 1980-86 period. As previously stated, the record before us is sparse with reference to the exact nature and extent of the County Commission’s activities as the District’s governing body. We can say with certainty, however, that during the period 1980-86, the County Commission was not an advisory group making recommendations to some other group. During the 1980-86 period, final policy making authority rested with the County Commission. The buck stopped there.
*926 (11) By ordinance, establish, merge, and abolish special purpose districts within which may be provided police and fire protection, beach erosion control, recreation facilities, water, streets, sidewalks, street lighting, waste and sewage collection and disposal, drainage, and other essential facilities and services. All county funds for such districts shall be provided by service charges, special assessments, or general tax levies within such districts only. The Board of County Commissioners shall be the governing body of all such districts and when acting as such governing body shall have the same jurisdiction and powers as when acting as the Board; provided, however, the Board of County Commissioners shall not be the governing body of the Metro-Dade Fire and Rescue Service District established by Ordinance No. 80-86, but said Fire and Rescue Service District shall be governed by five members elected for initial terms of two years by the registered voters of the Metro-Dade Fire and Rescue Service District.
*928 After the 1986 charter amendment, the County Commission amended the ordinance so that, pursuant to section 18-33, the County Commission makes all final decisions for the District and the Fire and Rescue Service Board makes none. Under any common, ordinary meaning, and under the standard definitions outlined above, the County Commission is the “governing body” under the 1987 ordinance. Under the 1987 ordinance, the Fire and Rescue Service Board is purely an advisory committee to the real governing body — the County Commission.
The law looks to substance, rather than form, and that is the substance of the matter. When the voters went to the polls in 1986, the term “governing body” had a known meaning as exemplified by the County Commission’s actual practice as “governing body” of the District from 1980 onward. The County Commission cannot, after the fact, redefine the term “governing body” into oblivion, nor can the Commission make the 1986 vote disappear by sleight of hand.
The trial court invalidated section 18-33 of the Dade County Code, with the exception of subsection (f), which conferred on the Board the power to sue and be sued.[5]
*929 As those portions of section 18-33 contravened the Charter, the judgment should be affirmed with respect to that section.[6]
III.
The trial court also invalidated subsections 18-27(c), (d), and (e) of the Code. In so doing I believe the trial court erred, and would reverse the judgment accordingly.
Section 18-27 provides:
Sec. 18-27. Membership on Governing Body.
(a) The governing body of the district shall be comprised of five (5) members elected on March 8, 1988, or at any earlier countywide election, for initial terms of two (2) years by the registered voters of the district.
(b) Each member shall be a qualified elector of Dade County residing within the district.
(c) In the event of a vacancy on the governing body, the members of the board of county commissioners, shall by majority vote, appoint a qualified individual to serve the remainder of the member’s term for whom the replacement is appointed.
(d) The chairperson and vice chairperson of the governing body shall be selected by a majority of the members of the governing body.
(e) Members of the governing body shall serve without compensation, salary or remuneration of any nature, but the county commission may provide in the annual district budget sufficient funds for the reasonable and necessary expenses incurred by the members in the performance of their duties and functions.
Subsection (c) provides that a midterm vacancy on the governing board will be filled by appointment by the County Commission. Subsection (d) provides that the governing board will select its own chairperson and vice chairperson by majority vote. These two subsections establish facially reasonable means to fill a vacancy in office and to select a presiding officer. These provisions do not, in my view, intrude into the power of the Board to act as the governing body of the District.
Subsection (e) presents two issues. The first clause states, “[mjembers of the governing body shall serve without compensation, salary or remuneration of any na-ture_” Id. § 18-27(e). In my view the County Commission may, consistently with the Charter, set the compensation of the Board members. That portion of subsection (e) does not reduce the power of the Board to act as governing body of the District.
A different question is presented by the second clause of subsection (e), which states, “but the county commission may provide in the annual district budget sufficient funds for the reasonable and necessary expenses incurred by the members in the performance of their duties and functions.” The present appeal is from a summary final judgment in favor of the District. The burden was on the District as movant to show its entitlement to relief. On this particular item the District has not met its burden.
From 1980 onward section 18-28 of the Code has provided:
Section 18-28. Annual budget and tax.
The annual budget for the District shall be adopted by the Board of County Commissioners in such manner as may be provided by law. The District shall levy an annual ad valorem tax not to exceed three (3) mills upon all taxable property within the District. The tax shall be assessed, levied and collected, in the manner provided by law.
As written, section 18-28 appears to draw a distinction between the power to tax, which is reserved to the District, and the power to adopt the annual budget, which is reserved to the County Commission (acting in its capacity as County Commission as opposed *930 to its capacity as governing body of the District).[7]
At least on the present record it appears that the power of budgetary approval was a function of the County Commissioners, rather than the District. That being so, the power to approve the budget could not have been one of those functions transferred to the Fire and Rescue Service Board by the 1986 charter amendment. The trial court, therefore, should not have invalidated subsection 18-27(e).
IV.
The next question is the remedy to be applied. The Board petitioned for a declaration that the cited portions of the 1987 ordinance contravened the 1986 charter amendment. The trial court agreed and granted the declaration of invalidity. That was the totality of the relief asked, and given.
In taking this step the trial court did not say that the County Commission is prevented from exercising its legislative powers over the District or the Board. The holding of the trial court was, simply, that when exercising its legislative powers, the County Commission could not do so in a way which violated the Charter.
The essential point here is that the 1986 charter amendment has already conferred the power to act as governing body on the Board. The question now is one of implementation. The County Commission, like this court, is obliged to carry out the intent of the voters as expressed in the Charter. As the Florida Supreme Court said in a very similar case:
When the people have spoken through their organic law concerning their basic rights, it is primarily the duty of the legislative body to provide the ways and means of enforcing such rights; however, in the absence of appropriate legislative action, it is the responsibility of the courts to do so.
Dade County Classroom Teachers Ass’n, Inc. v. The Legislature of the State of Florida, 269 So.2d 684, 686 (Fla.1972).
As the supreme court has indicated, it is the obligation of the County Commission to proceed with the implementation of the charter amendment. By far the most desirable and most efficient way for this to be accomplished is for implementing legislation to be passed in the form of a new ordinance. I am confident that, given such a mandate by this court, the County Commission will take appropriate action. Failing such action, of course, the Board can petition, and the courts can render, an appropriate judicial decree.
It is axiomatic that “[w]here people in a constitution or charter vote themselves a governmental benefit or privilege, they the people in whom the power of government is finally reposed, have the right to have their constitutional rights enforced.” Dade County Classroom Teachers Ass’n, Inc. v. The Legislature of the State of Florida, 269 So.2d at 686. The final judgment should be affirmed with respect to section 18-33, reversed with respect to section 18- *931 27, and remanded for further proceedings consistent herewith. As explained above, that ruling would be without prejudice to the County Commission to enact an ordinance implementing the 1986 charter amendment consistent with the views expressed herein, and without prejudice to the Board to again seek judicial relief if necessary.
SCHWARTZ, C.J., and HUBBART and BASKIN, JJ., concur.
Appendix

ORDINANCE NO. 80-86

ORDINANCE ESTABLISHING A FIRE AND RESCUE SERVICES DISTRICT; PROVIDING MUNICIPAL OPTIONS; ENACTING ARTICLE II OF CHAPTER 18 OF THE DADE COUNTY CODE; PROVIDING INCLUSION IN THE CODE; PROVIDING SEVERABILITY; AND PROVIDING THAT THE ORDINANCE BECOME EFFECTIVE ONLY IF APPROVED BY A MAJORITY OF THE REGISTERED VOTERS OF DADE COUNTY VOTING THEREON IN A SPECIAL ELECTION TO BE HELD ON SEPTEMBER 9, 1980
WHEREAS, the Dade County Home Rule Amendment to the Florida Constitution grants to the electors of Dade County the power to adopt a home rule charter providing a method for establishing special purpose districts; and
WHEREAS, said Charter provides that the Board of County Commissioners, as the legislative and the governing body of Dade County, shall have the power to establish special purpose districts which may provide essential facilities and services, including fire protection services; and
WHEREAS, several municipalities in Dade County have identified fire and rescue services as a possible area of dual taxation and have requested the County to investigate the issue; and
WHEREAS, an extensive analysis and review of the provision of fire and rescue services within Dade County has been completed by the independent accounting firm of Price, Waterhouse and Co. at the joint request of Dade County and the Dade County League of Cities, Inc.; and
WHEREAS, in that study Price, Water-house and Co., states that residents of the five municipalities which independently provide fire and rescue services also pay for County fire and rescue services which they do not receive; that residents of the unincorporated area of Dade County pay more for fire and rescue services than the benefits and services available in and provided to the unincorporated area; and that residents of the twenty (20) municipalities which utilize County fire and rescue services pay less for fire and rescue services than the benefits and services available and provided to those municipalities; and
WHEREAS, this Board intends to ensure that all residents within the County fairly contribute toward the cost of uniform fire and rescue services; and
WHEREAS, this Board finds and determines that a fire and rescue service district will provide a fair, equitable and uniform mechanism for the delivery and funding of fire and rescue services throughout Dade County,
NOW, THEREFORE, BE IT ORDAINED BY THE BOARD OF COUNTY COMMISSIONERS OF DADE COUNTY, FLORIDA:
Section 1. The aforementioned findings are hereby incorporated into this ordinance and made a part hereof.
Section 2. Article II of Chapter 18 of the Dade County Code is hereby enacted to read as follows:
ARTICLE II. METRO-DADE FIRE AND RESCUE SERVICE DISTRICT
Section 18-24. Creation of district.
A special district to be known and designated as the Metro-Dade Fire and Rescue Service District (hereinafter referred to as “the District") is hereby created and established in Dade County, Florida.
*932 Section 18-25. Boundaries.
The initial boundaries of the District are the geographic boundaries of Dade County, Florida.
The District boundaries may change from time to time based upon the exercise of the municipal option provided in Section 18-29.
Section 18-26. Service provided.
The service provided by the District shall include a uniform level of fire and rescue service throughout the District. The District shall begin the provision of such service within its boundaries on October 1, 1980, and shall from that date forth be ready, willing, and able to provide a uniform level of fire and rescue service on a countywide basis to all properties and residents within Dade County.
Section 18-27.
The Board of County Commissioners shall be the governing body of the District. Section 18-28. Annual budget and tax.
The annual budget for the District shall be adopted by the Board of County Commissioners in such manner as may be provided by law. The District shall levy an annual ad valorem tax not to exceed three (3) mills upon all taxable property within the District. The tax shall be assessed, levied and collected, in the manner provided by law.
Section 18-29. Municipal options.
(a) Any municipality may provide an alternate means of delivering fire and rescue services within the municipality. Municipal action under this provision shall remove the municipality from the District as provided in subsection (c) below.
(b) Any municipality which exercises the option provided in subsection (a) may subsequently determine to join the District through the enactment of an ordinance adopted by a two-thirds (⅜) vote of its governing body.
(c) Any ordinance or resolution enacted pursuant to subsections (a) or (b), subsequent to September 26, 1980, shall not be applicable to the. District until the next succeeding fiscal year and only if a certified copy thereof is submitted to the District at least six (6) months prior to the beginning of said fiscal year.
(d)If any municipality chooses to exercise the options provided under (a) or (b) of this subsection the boundaries of the District shall be automatically adjusted accordingly.
Section 18-30.
Any municipality may contract with the District for the delivery of additional fire and rescue services. Any services provided by the District in accordance with any such contract shall be in addition to the fire and rescue services provided under Section 18-26.
Section 18-31.
A duly certified copy of this ordinance shall be filed in the Office of the Clerk of the Circuit Court of Dade County, Florida, and recorded in the appropriate book of records.
Section 18-32.
Notwithstanding any other provision of Chapter 18, the District shall be governed solely by this Article II.
Section 3. It is the intention of the Board of County Commissioners, and it is hereby ordained that the provisions of this ordinance shall become and be made a part of the Code of Metropolitan Dade County, Florida. The sections of this ordinance may be renumbered or relettered to accomplish such intention, and the word “ordinance” may be changed to “section”, “article”, or other appropriate word.
Section 4. If any section, subsection, sentence, clause or provision of this ordinance is held invalid, the remainder of this ordinance shall not be affected by such invalidity.
Section 5. The provisions of this ordinance shall become effective ten (10) days after the date of its enactment only if approved by a majority vote of the registered voters of Dade County who vote on this issue in a special election to be held on September 9, 1980.
*933 PASSED AND ADOPTED: September 2, 1980

. The 1980 ordinance, No. 80-86, is set forth in the appendix to this dissent. The ordinance was approved by referendum.

. As amended, section 1.01(A)(11) of the Charter reads:
(A) The Board of County Commissioners shall be the legislative and the governing body of the county and shall have the power to carry on a central metropolitan government. *926 This power shall include but shall not be restricted to the power to:
[[Image here]]

. There is no indication in this record of an intention to alter the Fire Department’s chain of command or to remove the Department from the County’s administrative structure.

. For that reason the cases relied on by the County are inapposite. The principal case, Forbes Pioneer Boat Line v. Board of Commissioners of Everglades Drainage District, 77 Fla. 742, 82 So. 346 (1919), stands for the unexceptional proposition that special districts and their governing bodies possess no powers other than those expressly granted by law. That case did not involve the question whether the enabling legislation contravened the Florida Constitution.
It thus sheds no light on the present case, which involves the question whether the ordinance contravenes the charter.
The County relies on McGahey v. McLeod, 135 So.2d 446 (Fla. 3d DCA 1961), but that case actually supports the position of the Fire and Rescue Service Board. The court there held that a certain power did not exist where “[t]he language of the charter sections involved does *928 not grant nor does it imply that authority.” Id. at 447. The question under consideration here is precisely what powers were conferred, directly or by implication, on the Fire and Rescue Service Board by the 1986 charter amendment.

. The County conceded that, as a matter of law, the Board had the power to sue and be sued, whether or not the ordinance said so.

. Subsections (a)-(d) of section 18-33 involve the powers to conduct studies and formulate plans and programs. These powers could be included as part of a revised ordinance implementing the 1986 charter amendment. The real mischief in section 18-33 is in the final paragraph of that section.

. As a descriptive matter, such a budgeting arrangement falls loosely within the definition of "dependent special district” established by the Uniform Special District Accountability Act of 1989, chapter 189, Florida Statutes (1989):
(2) "Dependent special district” means a special district that meets at least one of the following criteria:
(a) The membership of its governing body is identical to that of the governing body of a single county or a single municipality.
(b) All members of its governing body are appointed by the governing body of a single county or a single municipality.
(c) During their unexpired terms, members of the special district’s governing body are subject to removal by the governing body of a single county or a single municipality.
(d)The district has a budget that requires approval through an affirmative vote or can be vetoed by the governing body of a single county or a single municipality.
This subsection is for purposes of definition only. Nothing in this subsection confers additional authority upon local governments not otherwise authorized by the provisions of the special acts or general acts of local application creating each special district, as amended.
§ 189.403(2), Fla.Stat. (1989) (effective July 1, 1990).
Effective July 1, 1990 this definition supplanted that formerly contained in subsection 218.-31(6), Florida Statutes (1989).