204 So.2d 193 (1967)
Nancy GRAHAM, a/k/a Nancy L. Sheppard, Formerly Nancy L. Azar, Petitioner,
v.
Charles T. AZAR, Respondent.
No. 36311.
Supreme Court of Florida.
November 15, 1967.
Rehearing Denied December 13, 1967.
*194 Charles J. Crowder, South Miami, for petitioner.
Jerrold A. Bross, Miami, for respondent.
THORNAL, Judge.
By a petition for a writ of certiorari we have for review a decision of the District Court of Appeal, Third District, which passes upon a question certified by the District Court to be one of great public interest. Azar v. Graham, 194 So.2d 684 (3d D.C.A. Fla. 1967).
We must decide whether the head of a Florida family can claim a constitutional homestead exemption against a money judgment for child support recovered by a former wife.
The petitioner Nancy Graham obtained a decree of divorce from the respondent Charles Azar in Dade County, Florida. The final decree provided for payment of support for a minor child. After default in payment, Mrs. Graham obtained a final money judgment against Azar in the amount of $1,963.70 covering accumulated delinquencies. She then obtained a writ of execution and levied on certain personal property owned by Azar who, like the petitioner, had remarried subsequent to the divorce. In defending against the levy, Azar filed an affidavit pursuant to Florida Statutes, Section 222.06, F.S.A. He claimed a constitutional exemption of personal property up to the value of $1,000.
Article X, Section 1, Florida Constitution, F.S.A., provides in part:
"A homestead * * * owned by the head of a family residing in this State, together with one thousand dollars worth of personal property, * * * shall be exempt from forced sale under process of any court, * * *"
The cited section then provides certain exceptions to this broad exemption. A judgment of the type here involved is not listed among the exceptions.
Florida Statutes, Section 222.06, F.S.A. provides the procedure for ascertaining the claim of exemption against a levy under writ of execution.
The trial judge denied Azar's claim of exemption. The District Court of Appeal reversed, holding the exemption applicable to the instant judgment. Azar v. Graham, *195 supra. It is this decision which we now review.
For reversal the petitioner relies upon the decision of this Court in Anderson v. Anderson, 44 So.2d 652 (Fla. 1950). By way of obiter some of the broad language of Anderson would appear to aid the petitioner. However, the rule of the decision is not dispositive of the case before us. In Anderson the former husband had not remarried and established himself as the head of another family, as he has done here. He there undertook to claim that he was the head of a family consisting of his divorced wife and children. At the same time, he asserted the constitutional exemption against the very "family" which he claimed to head. This obviously could not be done. It was decided that the former husband, still unmarried, was no longer "the head of a family", custody of the children having been awarded to the former wife. Not being the "head of a family" Anderson was not entitled to claim the homestead exemption. In the instant case Azar has remarried and is admittedly the head of a new family. We assume from the record that he was remarried at the time the judgment was entered in favor of his former wife. See Pasco v. Harley, 73 Fla. 819, 75 So. 30 (1917).
Petitioner also relies on several decisions of the Supreme Court of Alabama. However, the Alabama Constitution, Article 10, Section 204, provides the exemption against execution "issued for the collection of any debt contracted" since a certain time. This exemption has been construed to apply only to contractual obligations. Brown Shoe Co. v. Schaefer, 242 Ala. 310, 6 So.2d 405 (1942).
The exempting language of the Florida Constitution is broad and comprehensive. It is clear and specific. It simply exempts to the head of a family $1,000 worth of personal property "from forced sale under process of any court". The second sentence of Article X, Section 1, supra, does exclude from the exemption protection certain specifically enumerated types of claims. A judgment for child support in favor of a divorced wife and against a remarried family head is not one of them.
This particular article of the 1885 Constitution was debated extensively by the Convention which proposed it. See, Journal of Proceedings of the Constitutional Convention, 1885, and Index to the Journal, by Thursby and Hartsfield. At no point was it ever suggested that a judgment of the type under consideration should be excluded from the exemption provision. In view of the fact that the framers of the Constitution devoted extensive consideration to the wording of the exemption, as well as to the specific exclusions, we feel justified in concluding that any judgment within the broad scope of the exemption is covered by it, unless specifically excluded. Expressio unius est exclusio alterius.
When considering this section over the years, this Court and the District Courts of Appeal have consistently held that the exemption provision should be liberally construed. Bessemer Properties v. Gamble, 158 Fla. 38, 27 So.2d 832 (1946); Olesky v. Nicholas, Fla., 82 So.2d 510 (1955); In re Livingston's Estate, Fla.App., 161 So.2d 723 (2d D.C.A. 1964); White v. Posick, Fla.App., 150 So.2d 263 (2d D.C.A. 1963). At the same time, it has been held that exceptions to the exemptions should be strictly construed. Lewton v. Hower, 18 Fla. 872 (1882); Wilhelm v. Locklar, 46 Fla. 575, 35 So. 6 (1903).
By applying these rules, as well as the clear language of the Constitution, we can arrive at no conclusion other than to agree with the District Court that the claimed exemption should be allowed. The Supreme Court of California reached a similar conclusion in Yager v. Yager, 7 Cal.2d 213, 60 P.2d 422 (1936).
We resist the temptation to venture upon a philosophical discussion regarding the father's duty to support his minor children. The entire record on the merits is not here. We do remind that delinquencies *196 in compliance with alimony and support decrees are otherwise enforceable despite the cited constitutional exemption provision. The potent power of a citation for contempt is always available to a chancellor in proper cases.
Having responded to the question certified, the decision of the District Court of Appeal is approved and the writ is discharged.
It is so ordered.
CALDWELL, C.J., DREW, J., and WHITE, Circuit Judge (Retired), concur.
ERVIN, J., dissents with opinion.
ERVIN, Judge (dissenting):
The judgment sought to be enforced against Respondent's homestead property is to obtain support money for Respondent's daughter. Under such circumstances, Section 1, Article X, State Constitution, appears to me to afford no barrier to enforcement of the judgment. A father is responsible for the support of his minor children regardless of the fact he is divorced from their mother. A judgment for the support of a child, duly entered by a court having jurisdiction to see to it that child support is made available, as was the situation here, is unlike a judgment of a creditor who has no status as a child of the judgment debtor.
The judgment for child support is in actuality merely a judicial determination of the child's current continuing needs. Respecting its need for support, the child stands on the same footing as it did at the moment of its parents' divorce and prior to the father's remarriage. The remarriage of the father considered in relation to Section 1, Article X cannot constitutionally operate to defeat the child's rights to gain support from its father's property which existed and vested at the time of its father's divorce and when he became no longer the head of a family. It would be discriminatory and contrary to due process to allow the wife and the children, if any, of the second family to have complete priority in the benefits of the husband-father's homestead property over the support needs of a child of the father of the former marriage. The homestead property of the father should not be placed beyond reach of child support merely because the child involved is not residing with him in the second family group of which he is later the head. The child's rights to support remain the same constructively as against the father and his homestead property as they did at the time of his divorce, regardless of Section 1, Article X. Section 1, Article X was never intended to cut off inured rights of children to support in any property their father owns if resort to such property becomes necessary.
The fact a judgment for the child's support was obtained does not bring Section 1, Article X into play because the courts' powers to enforce child support remain the same as existed at the time of the divorce. Contempt is not the only means to enforce child support. It may also be enforced by judgment or decree against any property the father owns, including his homestead property, since such support is a continuing charge against his estate which ensued from the birth of the child. Merely because the divorce is granted and the custody of the child is determined does not place the homestead property of the father created by his later status as the head of a second family beyond reach of judicial decree or judgment for child support because of Section 1, Article X. The courts retain the same powers to enforce child support from the homestead property of the father as existed prior to and at the time of the divorce. To hold otherwise would result in unequal treatment of children of divorced parents and unduly favor wives and children of remarriages.
I conclude the judgment for child support should be enforced from the homestead *197 property with the reservation a court of equity might intervene to determine whether the enforcement of the judgment would give the child a disproportionate recovery from the homestead property over the second family.