605 So.2d 56 (1992)
Robert A. BUTTERWORTH, etc., Petitioner,
v.
Louis A. CAGGIANO, Respondent.
No. 78377.
Supreme Court of Florida.
July 9, 1992.
Rehearing Denied October 9, 1992.
*57 Robert A. Butterworth, Atty. Gen., and Roberta Fox, Keith P. Vanden Dooren, Steven H. Parton and J. Mark Kraus, Asst. Attys. Gen., Tallahassee, for petitioner.
Joseph A. Eustace, Jr. of Anthony J. LaSpada, P.A., Tampa, for respondent.
Robert Augustus Harper, Chairman, Tallahassee, James T. Miller, Co-Chairman, Jacksonville, George E. Tragos, FACDL President, Clearwater, and Robert S. Griscti of Turner & Griscti, P.A., Gainesville, amicus curiae for Florida Ass'n of Crim. Defense Lawyers.
BARKETT, Chief Justice.
We have for review Caggiano v. Butterworth, 583 So.2d 347, 348 (Fla. 2d DCA 1991), in which the district court certified the following question of great public importance:[1]
Whether forfeiture of homestead under the RICO Act is forbidden by article X, section 4 of the Florida Constitution?
We answer the certified question in the affirmative and approve the decision below.[2]
Caggiano was convicted in 1986 of one count of racketeering in violation of the Florida Racketeer Influenced and Corrupt Organization Act (Florida RICO Act), chapter 895, Florida Statutes (1983 & Supp. 1984), and fifteen counts of bookmaking in violation of chapter 849, Florida Statutes (1983 & Supp. 1984). Three of the bookmaking incidents occurred at Caggiano's personal residence. The State later sought forfeiture of the residence in separate civil proceedings under the Florida RICO Act on the grounds that the property was "used" in the course of racketeering activity in violation of section 895.05(2)(a), Florida Statutes (1989). The trial court, relying on DeRuyter v. State, 521 So.2d 135 (Fla. 5th DCA 1988), found that the homestead exemption in article X, section 4 of the Florida Constitution did not protect Caggiano's residence against RICO forfeiture, and entered final summary judgment for the State. Caggiano appealed to the Second District Court of Appeal, which reversed the trial court's entry of summary judgment and held that homestead property is not subject to forfeiture under the Florida RICO Act. The Second District noted conflict *58 with DeRuyter and certified the question to this Court. The State seeks review of the Second District's decision.
Article X, section 4 of the Florida Constitution provides in relevant part:
Section 4. Homestead; exemptions. 
(a) There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty, the following property owned by a natural person:
(1) a homestead, if located outside a municipality, to the extent of one hundred sixty acres of contiguous land and improvements thereon, which shall not be reduced without the owner's consent by reason of subsequent inclusion in a municipality; or if located within a municipality, to the extent of one-half acre of contiguous land, upon which the exemption shall be limited to the residence of the owner or his family[.]
The "civil remedies" section of the Florida RICO Act provides:
All property, real or personal, including money, used in the course of, intended for use in the course of, derived from, or realized through conduct in violation of a provision of ss. 895.01-895.05 is subject to civil forfeiture to the state.
§ 895.05(2)(a), Fla. Stat. (1989). "Real property" is defined as "any real property or any interest in such real property, including, but not limited to, any lease of or mortgage upon such real property." § 895.02(9), Fla. Stat. (1989).
In DeRuyter the Fifth District Court of Appeal held that constitutional homestead property was not exempt from RICO forfeiture. The court reasoned:
No appellate decisions on this question have been cited and none have been found by our research. However, we view forfeiture of property due to its use in a criminal enterprise, to be entirely different from the "forced sale" language in the constitution. The purpose of the constitutional provision is to protect homestead property from forced sale for debts of the owner. Tullis v. Tullis, 360 So.2d 375 (Fla. 1978). Forfeiture here is not predicated upon debts incurred by the owner but rather is based solely on the illegal uses to which the property is being put. Article X, section 4, Florida Constitution, was simply not designed to immunize real property for use in a criminal enterprise.
521 So.2d at 138.
The State argues that a forfeiture is not a "forced sale" and that the homestead exemption was not intended to apply outside the debtor context, and urges that, like the Fifth District, we interpret the constitutional provision as inapplicable to forfeiture. In light of the purpose and language of the provision, we are unable to do so.
A settled rule of constitutional interpretation is that:
The words and terms of a Constitution are to be interpreted in their most usual and obvious meaning, unless the text suggests that they have been used in a technical sense. The presumption is in favor of the natural and popular meaning in which the words are usually understood by the people who have adopted them.
City of Jacksonville v. Continental Can Co., 113 Fla. 168, 172, 151 So. 488, 489-90 (1933); see also Wilson v. Crews, 160 Fla. 169, 175, 34 So.2d 114, 118 (1948); City of Jacksonville v. Glidden Co., 124 Fla. 690, 692-93, 169 So. 216, 217 (1936).
Additionally, Florida courts have consistently held that the homestead exemption in article X, section 4 must be liberally construed. E.g., Graham v. Azar, 204 So.2d 193, 195 (Fla. 1967); Hill v. First Nat'l Bank, 79 Fla. 391, 401, 84 So. 190, 193 (1920). A liberal construction of the homestead exemption is particularly appropriate in the context of forfeiture. Forfeitures are considered harsh penalties that are historically disfavored in law and equity, and courts have long followed a policy of strictly construing such statutes. Department *59 of Law Enforcement v. Real Property, 588 So.2d 957, 961 (Fla. 1991); General Motors Acceptance Corp. v. State, 152 Fla. 297, 302, 11 So.2d 482, 484 (1943); see Michael Paul Austern Cohen, Note, The Constitutional Infirmity of RICO Forfeiture, 46 Wash. & Lee.L.Rev. 937, 939 (1989).
Applying these principles, we first note that all property forfeited[3] under the Florida RICO Act is required by statute to be sold at a state auction. Section 895.05(2)(c), Florida Statutes (1989), provides:
The state shall dispose of all forfeited property as soon as commercially feasible. If property is not exercisable or transferable for value by the state, it shall expire. All forfeitures or dispositions under this section shall be made with due provision for the rights of innocent persons. The proceeds realized from such forfeiture and disposition shall be promptly distributed in accordance with the provisions of s. 895.09.
In any event, there is no indication that the word "sale" in article X, section 4 is being used in its technical, legal sense in isolation from the surrounding language. To the contrary, it appears that the homestead exemption uses broad, nonlegal terminology that was intended simply to guarantee that the homestead would be preserved against any involuntary divestiture by the courts, without regard to the technicalities of how that divestiture would be accomplished.
The Iowa Supreme Court has likewise so viewed the protection of a homestead and held forfeiture to be a "judicial sale" within the meaning of its statutory homestead exemption.[4]
In considering whether an order of forfeiture is a judicial sale within the meaning of Iowa Code section 561.16, we are guided by well-established principles. In this state, homestead statutes are broadly and liberally construed in favor of exemption. "Regard should be had to the spirit of the law rather than its strict letter." The homestead exemption is not "for the benefit of the husband or wife alone, but for the family of which they are a part." Further still, we have recognized that the exemption is not only "for the benefit of the family, but for the public welfare and social benefit which accrues to the state by having families secure in their homes." The policy of our law is to jealously safeguard homestead rights.
With these principles in mind, we think that the term "judicial sale" as used in chapter 561 was intended to encompass any judicially compelled disposition of the homestead, whether denominated a "sale" or not. Cf. 40 Am.Jur.2d Homestead § 92 (1968) (any compulsory disposition of the homestead is contrary to the homestead exemption); Lanahan v. Sears, 102 U.S. 318, 322, 26 L.Ed. 180, 181 (1880) ("A forced dispossession [of a homestead] in ejectment is as much within the prohibition [of forced sale of a homestead] as a forced sale under judicial process."). Although an order of forfeiture is less a sale to the State than a commandeering by the State, it cannot be denied that the benevolent purposes of the homestead statute would be frustrated by giving the term "judicial sale" in section 561.16 a narrow or technical construction dependent upon finding a true "sale." The term should be given a liberal construction in section 561.16 so as to further the purposes of the exemption. See Iowa Code § 4.2 (Iowa Code to be construed liberally to promote its objects).
In re Property Seized from Bly, 456 N.W.2d 195, 199 (Iowa 1990) (alterations in original) (citations omitted). This logic is even more persuasive when the operative language is elevated to the level of a constitutional *60 exemption, as is Florida's homestead provision.
Contrary to the State's assertion, the plain import of the constitutional language of article X, section 4 is not limited to the debtor-creditor context. The language of the provision refers to "forced sales," not "forced sales arising from debts." The purpose of the homestead exemption has been described broadly as being to protect the family, and to provide for it a refuge from misfortune, without any requirement that the misfortune arise from a financial debt. See, e.g., Collins v. Collins, 150 Fla. 374, 377, 7 So.2d 443, 444 (1942) ("The purpose of the homestead is to shelter the family and provide it a refuge from the stresses and strains of misfortune.").
Most significantly, article X, section 4 expressly provides for three exceptions to the homestead exemption. Forfeiture is not one of them. According to the plain and unambiguous wording of article X, section 4, a homestead is only subject to forced sale for (1) the payment of taxes and assessments thereon; (2) obligations contracted for the purchase, improvement or repair thereof; or (3) obligations contracted for house, field or other labor performed on the realty. Under the rule "expressio unius est exclusio alterious"  the expression of one thing is the exclusion of another  forfeitures are not excluded from the homestead exemption because they are not mentioned, either expressly or by reasonable implication, in the three exceptions that are expressly stated.
It makes no difference that the attempted divestiture in this case was an adjunct to a criminal proceeding. As the Supreme Court of Kansas declared in construing its state's constitutional homestead exemption:
The homestead provision of our Constitution sets forth the exceptions and provides the method of waiving the homestead rights attached to the residence. These exceptions are unqualified. They create no personal qualifications touching the moral character of the resident nor do they undertake to exclude the vicious, the criminal, or the immoral from the benefits so provided. The law provides for punishment of persons convicted of illegal acts, but the forfeiture of homestead rights guaranteed by our Constitution is not part of the punishment.
State ex rel. Apt v. Mitchell, 399 P.2d 556, 558 (Kan. 1965) (emphasis added). Florida law likewise prohibits the implication of exceptions or limitations to article X, section 4. In Olesky v. Nicholas, 82 So.2d 510, 513 (Fla. 1955), this Court noted:
We find no difficulty in holding that the Florida constitutional exemption of homesteads protects the homestead against every type of claim and judgment except those specifically mentioned in the constitutional provision itself and that, therefore, the claim of homestead is good against the demands of a judgment grounded on a malicious tort.
(Emphasis added). See also Graham v. Azar, 204 So.2d at 195. The Florida homestead provision clearly contains no exception for criminal activity. Neither the legislature nor this Court has the power to create one.[5]See, e.g., Henderson v. State, *61 155 Fla. 487, 491, 20 So.2d 649, 651 (1945); Crawford v. Gilchrist, 64 Fla. 41, 54, 59 So. 963, 968 (1912).
Consequently, in light of the historical prejudice against forfeiture, the constitutional sanctity of the home, and the rules of construction requiring a liberal, nontechnical interpretation of the homestead exemption and a strict construction of the exceptions to that exemption, we hold that article X, section 4 of the Florida Constitution prohibits civil or criminal forfeiture of homestead property.
Accordingly, we answer the certified question in the affirmative, disapprove DeRuyter, and approve the decision of the court below.
It is so ordered.
OVERTON, McDONALD, SHAW, KOGAN and HARDING, JJ., concur.
GRIMES, J., dissents with an opinion.
GRIMES, Justice, dissenting.
Article X, section 4(a) of the Florida Constitution, provides that homesteads "shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon," except those arising from certain obligations not relevant to this case. RICO forfeitures do not come within the literal language of this exemption because they do not involve a forced sale and there is no judgment, decree, or execution which purports to be a lien on the property. Therefore, the question becomes whether or not it reasonably can be said that RICO forfeitures fall within the intent of this constitutional exemption.
From the time the homestead exemption was first placed in our constitution, Florida courts have consistently pointed out that its purpose was to protect the home from loss occasioned by economic misfortune. Bigelow v. Dunphe, 143 Fla. 603, 197 So. 328 (1940); Hill v. First Nat'l Bank, 79 Fla. 391, 84 So. 190 (1920); Vandiver v. Vincent, 139 So.2d 704 (Fla. 2d DCA 1962). After the adoption of our 1968 constitution, we reaffirmed this principle in Tullis v. Tullis, 360 So.2d 375, 377 (Fla. 1978), when we stated:
The purpose of the homestead exemption provision in our state constitution is to protect the family home from forced sale for the debts of the owner and head of the family.
While the homestead exemption is to be liberally construed, the law should not be applied to make it an instrument of fraud or imposition upon creditors. Milton v. Milton, 63 Fla. 533, 58 So. 718 (1912). Thus, Florida courts have not hesitated to impose equitable liens on homesteads to provide relief from fraud or other reprehensible conduct. Jones v. Carpenter, 90 Fla. 407, 106 So. 127 (1925); Gepfrich v. Gepfrich, 582 So.2d 743 (Fla. 4th DCA 1991). In La Mar v. Lechlider, 135 Fla. 703, 711, 185 So. 833, 837 (1939), we reasoned:
To say that a lien could not be decreed against the homestead under the facts in this case would be to make the homestead an instrument of fraud.
If the courts are unwilling to permit the homestead exemption to protect a home which has been used as an instrument of fraud, it seems obvious that the homestead exemption should not be applied to protect *62 a home that has been an instrument of crime.
I agree with the Fifth District Court of Appeal in DeRuyter v. State, 521 So.2d 135, 138 (Fla. 5th DCA 1988), when it said:
Forfeiture here is not predicated upon debts incurred by the owner but rather is based solely on the illegal uses to which the property is being put. Article X, section 4, Florida Constitution, was simply not designed to immunize real property for use in a criminal enterprise.
See In re 1632 N. Santa Rita, 801 P.2d 432 (Ariz. Ct. App. 1990), and People v. Allen, 767 P.2d 798 (Colo.Ct.App. 1988), both of which employed similar rationale.
RICO forfeitures were unknown until the 1970 enactment of the federal RICO statute. Constitutional provisions should be construed in light of the reasonable meanings according to the subject matter, but in the framework of contemporary societal needs and structure. In re Advisory Opinion to Governor, 276 So.2d 25 (Fla. 1973). Can it seriously be argued that the homestead exemption would have been intended to protect the forfeiture of a home when the home itself was an instrumentality of a criminal enterprise?
Under the forfeiture statute, the interests of innocent persons are protected. Here, however, Caggiano does not even have a family to protect. Under the majority opinion, a building which is used for the manufacture of illegal drugs is immune from forfeiture so long as the owner lives on the premises. Such a ruling is against the public policy of the state as expressed by the legislature in the enactment of laws which forfeit property used in the commission of crimes. While the majority refers to the "historical prejudice against forfeiture," I suggest that there is an even greater historical prejudice against crime.
I respectfully dissent.
NOTES
[1] We have jurisdiction pursuant to article V, § 3(b)(4) of the Florida Constitution.
[2] The parties have not raised, and we do not address, any other issues.
[3] When forfeited in this context, property is obviously taken from the owner, through court process, without the owner's consent.
[4] Iowa Code section 561.16 (1991) provides in relevant part:

The homestead of every person is exempt from judicial sale where there is no special declaration of statute to the contrary.
[5] The State cites a number of cases for the proposition that Florida courts have refused to allow the homestead exemption to shield property where there is fraud or other "reprehensible conduct." In particular, the State cites cases where the courts have imposed equitable liens on homesteads. See, e.g., Bessemer v. Gersten, 381 So.2d 1344 (Fla. 1980); La Mar v. Lechlider, 135 Fla. 703, 185 So. 833 (1939); Jetton Lumber Co. v. Hall, 67 Fla. 61, 64 So. 440 (1914); Milton v. Milton, 63 Fla. 533, 58 So. 718 (1912). Thus, the State argues that a constitutional provision that does not shield fraud or other "reprehensible conduct" cannot logically shield property where there is a pattern of criminal conduct involved.

All of the cases cited by the State where a court has actually imposed a lien on the homestead in question, however, are either factually or legally inapposite. Virtually all of the relevant cases involve situations that fell within one of the three stated exceptions to the homestead provision. Most of those cases involve equitable liens that were imposed where proceeds from fraud or reprehensible conduct were used to invest in, purchase, or improve the homestead. See, e.g., Jones v. Carpenter, 90 Fla. 407, 415, 106 So. 127, 130 (1925); La Mar, 135 Fla. 703, 711, 185 So. 833, 836. Other relevant cases cited involve situations where an equitable lien was necessary to secure to an owner the benefit of his or her interest in the property. See, e.g., Tullis v. Tullis, 360 So.2d 375, 377 (Fla. 1978) ("We hold, with the First District, that our constitutional provisions allow the partition and forced sale of homestead property upon suit by one of the owners of that property, if such partition and forced sale is necessary to protect the beneficial enjoyment of the owners in common to the extent of their interest in the property."). In particular, Tullis involved a marital situation with joint homestead property. In no other case has this Court imposed a lien on a homestead beyond one of the three stated exceptions in the constitutional provision. The Court in Bessemer specifically did not address the issue of whether the lien came within one of the stated exceptions to the homestead exemption. 381 So.2d at 1347 n. 1.
The factual situations involved in the cited cases are not present here. It is undisputed that no illicit proceeds were used to purchase, acquire, or improve Caggiano's property.