In re Thomas Wherrett MILLER, Debtor.

Stephen L. **MEININGER**,
Trustee, Plaintiff,

v.

Thomas Wherrett **MILLER** and Patricia
E. Miller, Defendants.

Bankruptcy No. 94–6035–9P7.
Adv. No. 95–25.

United States Bankruptcy Court,
M.D. Florida,
Ft. Myers Division.

Oct. 17, 1995.

Randolph A. Fabal, Tampa, FL, for Plaintiff.

Jeffrey W. Leasure, Ft. Myers, FL, for Defendant.

Daniel A. Medeiros, Sarasota, FL, for Debtor/Defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

This is a Chapter 7 case and the matter under consideration is a Complaint filed by Stephen L. Meininger (Trustee), who seeks to set aside certain transactions by Thomas Wherrett Miller (Debtor). The Trustee's claim for relief is set forth in his five Count Complaint.

In Count I the Trustee seeks to avoid the fraudulent transfer of property pursuant to 11 U.S.C. § 544(a) and Florida Statutes § 726.105(1)(a); the Claim in Count II is based 11 U.S.C. § 544(a) and Fla.Stat. § 726.105(1)(b) and the claim on Count III is based on 11 U.S.C. § 544(a) and Fla.Stat. § 726.106(1). In Count IV the Trustee seeks to avoid fraudulent transfers pursuant to 11 U.S.C. § 544(a) and Fla.Stat. § 726.105(1)(a) and the claim in Count V is based on 11 U.S.C. 550 to recover property. In Counts I, II, III, and IV, the Trustee's reliance on Code § 544(a) is incorrect and the correct provision should be Code § 544(b). Additionally, pursuant to 11 U.S.C. § 522(b)(2) the Trustee objects to Debtor's property claimed as exempt. The facts relevant to the resolution of the respective claims of the Trustee are as follows.

Debtor, together with Robert J. Cloughley and Paul T. Kane, endorsed, executed and

delivered to Donald R. Cameron, as Trustee of the Donald R. Cameron, P.A., Defined Benefit Pension Trust and Joyce Cameron two promissory notes, each dated October 5, 1987 in the original amount of $153,716.71, payable in full with ten percent interest due on October 5, 1992. Additionally on the same day, Debtor and Cloughley and Kane endorsed, executed and delivered to John A. Cochrane and Carolyn A. Cochrane, two promissory notes each in the original amount of $380,000 payable with ten percent interest and due on or before October 5, 1992.

Prior to August 21, 1992, the Debtor and his wife Patricia E. Miller (P. Miller) owned as tenants in common six parcels of real estate and a leasehold interest. These involved the following properties:

| Transfer Date | Property | % each as T.C. | % as T.E. |
|---|---|---|---|
| 8–21–92 | "Outparcel" | ½ | whole |
| 8–21–92 | "Buttonwood" | ¼ | ½ |
| 8–21–92 | "Shops" | ¼ | ½ |
| 8–21–92 | "Chevron" | ¼ | ½ |
| 8–21–92 | "Beachwalk Apt" | ½ | whole |
| 8–21–92 | "Amoco" | ½ | whole |

On September 29, 1992, Debtor and P. Miller, as Trustees of the Thomas Wherrett Miller and Patricia Meagher Miller Revocable Trust, transferred to Debtor and P. Miller, husband and wife, as tenants by the entireties, an undivided one-third (⅓) interest in a certain lease described as the "1100 Gulf Shore Property."

These transfers are collectively referred to as the "First Transfers". These transfers form the basis of the Trustee's claims set forth in Count I, Count II and Count III of the Complaint. It is without dispute that the Debtor did not receive any consideration in exchange for transferring his fractional, severable interest in the properties just described.

After the "First Transfers," the four notes held by the Camerons and the Cochranes became due on October 5, 1992. Thereafter on December 7, 1992, the Debtor and P. Miller, as tenants by the entireties transferred by warranty deed to P. Miller their interest in five of the six properties which were the subject of the "First Transfers" and their interest in the sixth referred to as the Amoco property to the Debtor, individually. These transfers are referred to as the "Second Transfers."

*Property transferred by Debtor & Wife as T.E. to Wife Individually are as follows:*

| Property | Valuation | Interest Transferred | Amount Transferred |
|---|---|---|---|
| Outparcel | $ 10,200 | ½ | $ 5,200 |
| Buttonwood | 140,000 | ¼ | 35,000 |
| Shops | 363,500 | ¼ | 90,875 |
| Chevron | 221,500 | ¼ | 55,375 |
| Beachwalk Apt. | 110,000 | ½ | 55,000 |
| Total | | | $241,450 |

*Property transferred by Debtor & Wife as T.E. to Debtor Individ.*

| Property | Valuation | Interest Transferred | Amount Transferred |
|---|---|---|---|
| Amoco | $461,000 | ½ | $230,500 |

In March 1993, the Debtor and his wife sold their homestead and received proceeds in the form of satisfaction of the mortgage on the homestead, cash which they deposited in a certificate of deposit, and they used these funds in part in the acquisition of a condominium apartment at 7th Avenue South, Naples, Florida (not their homestead).

On April 1, 1993, Debtor sold the Amoco Property for approximately $250,000. The net proceeds were used to purchase for cash his current homestead (515 Serendipity Drive, Naples, FL) in the amount of $168,250 and to pay off loans against the cash value of two life insurance policies, Northwestern Mutual Life Insurance Policy # 7698971 in the amount of $14,279.25 and Provident Mutual

Life Insurance Policy # 2,168,951 in the amount of $37,348.54.

Basically these are the facts established at the trial, based on which the several claims as set forth in the Trustee's Complaint must be evaluated. It is the Trustee's contention that both the "First and the Second Transfers" were fraudulent transfers, thus by virtue of § 544(b) of the Bankruptcy Code, the Trustee may avoid these transfers by relying on the Uniform Fraudulent Transfer Statute of Florida, Fla.Stat. 726.105, et seq. and 726.106, et seq. (Claims in Counts I, II, III, and IV) and based on § 550 of the Code (Liability of a transferee of an avoided transfer) (Claim in Count V). In addition, the Trustee also objected to the Debtor's claim of exemptions.

In opposing the Trustee's claim, it is contended by the Debtor that these transfers were not done with the actual intent to hinder, delay or defraud the creditors. The debtor claims the primary purpose behind the First Transfers was the estate planning benefits in holding the property as tenancy by the entireties. The debtor claims that retention of an ownership interest in the properties left the property subject to the claim of at least one creditor of the Debtor, BancFlorida. It is admitted by the Debtor that these second transfers took place in order to protect certain properties from his individual creditors and to expose one parcel to his creditors.

■ Section 544(b) of the Bankruptcy Code provides that "the trustee may avoid any transfer of an interest of the debtor in property ... that is voidable under applicable law for a creditor holding an unsecured claim ..." Thus, in order to prevail under section 544(b), the Trustee must first establish that, at the time of the transfer, there was an existing creditor who was holding an unsecured claim. *In re Steele,* 79 B.R. 503, 504 (Bankr.M.D.Fla.1987). The existence of unsecured creditors, Cameron and Cochrane, of the Notes listed in the facts satisfies the threshold test for the application of section

544(b). Secondly, under section 544(b), the Trustee must prove that the alleged fraudulent transfers could have been avoided by one of these unsecured creditors under Florida's Fraudulent Transfer Act.

The Trustee relies on Fla.Stat. § 726.105, which provides:

"(1) transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation incurred, if the debtor made the transfer or incurred the obligation: (a) with actual intent to hinder, delay or defraud any creditor of the debtor."

It should be noted at the outset that it is the Trustee's burden to establish with the preponderance of the evidence that the conversion by the Debtor of his interests, as a tenant in common, to himself and to his wife as tenants by the entireties in the six properties referred to earlier was a "transfer" within the meaning as that term is defined by § 101(54) of the Code and it was done with actual intent to hinder, delay or defraud a creditor. It cannot be contended in good faith that the conveyance involved was not a "transfer." This is so because prior to the conveyance by the Debtor, his fractional interests could have been subjected to satisfy the claims of the Camerons and Cochranes, and they could not reach that interests after the conveyance because they had no enforceable claims against Patricia Miller the Debtor's wife. The next element the Trustee must establish is that the transfer was made with actual intent to hinder, delay or defraud any creditor of the Debtor.

Section 726.105(2) list eleven factors to consider in determining actual intent under 726.105(1)(a). They include whether:

(a) The transfer or obligation was to an insider.

(b) The debtor retained possession or control of the property transferred after the transfer.

(c) The transfer or obligation was disclosed or concealed.

(d) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.

(e) The transfer was for substantially all of the debtor's assets.

(f) The debtor absconded.

(g) The debtor removed or concealed assets.

(h) The value of the consideration received by the debtor was reasonably equivalent to the value of the assets transferred or the amount of the obligation incurred.

(i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.

(j) The transfer occurred shortly before or after a substantial debt was incurred.

(k) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider or the debtor.

■ It is clear from the language of the Statute that in determining intent, consideration may be given to factors other than those listed above. For instance in *Harper v. U.S.*, 769 F.Supp. 362 (M.D.Fla.1991) the court held that under the Statute, lack of consideration, close family relationship between the transferor and the transferee, pending or threatened litigation and insolvency or substantial indebtedness may indicate fraudulent intent.

In this evidence it is without dispute that the Debtor did not receive any consideration for the transfer, it was transferred to his wife, the Debtor was clearly insolvent or at least had a very substantial debt owed to the Camerons and to the Cochranes, and the indebtedness was about to become due. Thus, it is not difficult to conclude that the primary if not the sole motivation for the change of ownership was the specific intent of the Debtor to delay, hinder, if not outright to defraud his creditors, specifically the Camerons and the Cochranes. Based on the foregoing, this Court is satisfied that the Trustee did establish with the requisite degree of proof, all the necessary elements of a voidable transfer for the "First Transfer" as fraudulent under Fla.Stat. 726.105(1).

■ The Trustee in **Count II** seeks to avoid transfers of property pursuant to Code section 544(b) and Fla.Stat. § 726.105(1)(b) alleging transfers without consideration where the debtor intended to incur, or reasonably should have believed that he would incur, debts beyond his ability to repay.

There is no evidence in this record which would warrant the conclusion that the Debtor intended to incur or should have believed that he will incur debts beyond his ability to repay the debts. While one might suspect that this is the case, this is insufficient to sustain the burden of proof as it relates to the Claim in Count II of the Complaint.

■ The Trustee in **Count III** seeks to avoid transfers of property pursuant to Code section 544(b) and Fla.Stat. § 726.106. Florida Statute 726.106(1) provides:

"a transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at the time or the debtor became insolvent as a result of the transfer or obligation."

It is clear that the First Transfer was without consideration. The fact that as a result of the transfer the Debtor received interest in his wife's property interest in the six properties involved in the First Transfer is of no consequence and insufficient to furnish adequate consideration for the transfer. This is so because before the transfer the Debtor had an unfettered control over his fractional share in the properties but after the transfer he no longer had that control because he no longer could alienate his interest in the properties without his wife consent. It is fair to conclude that the Debtor became insolvent as the result of the change of his ownership interest because he was left with no property which he owned individually. Fla.Stat. § 726.102(2)(c) provides that an interest in property held in tenancy by the entireties is not included as an asset to the extent it is not subject to process by a creditor holding a claim against only one tenant. Based on the foregoing there is sufficient evidence to find that the First Transfer was

also fraudulent under Fla.Stat. 726.106(1) and thus avoidable by the Trustee pursuant to § 544(b) of the Bankruptcy Code.

■ The claim in **Count IV** of the Complaint is based on Fla.Stat. 726.105(1)(a) and is directed to the "Second Transfer". As noted earlier, to prevail under this section the Trustee must establish with the requisite degree of proof that the Debtor made the transfer or incurred the obligation with actual intent to hinder, delay or defraud a creditor. The "Second Transfer" occurred December 2, 1992 after the Notes became due and were outstanding and not paid. This transfer was by the Debtor and his wife as tenants by the entireties to P. Miller the Debtor's wife individually. Viewing the Second Transfer in isolation one might conclude that it could not be a voidable transfer as fraudulent because the Debtor's interest at the time of the transfer of the five properties to his wife individually could not have been reached by his creditors and were insulated from the claims of his creditors because his ownership was as a tenant by the entireties and as such was only reachable by creditors who had a claim against both the Debtor and his wife P. Miller. However, the properties became insulated as the result of the First Transfer and was found already avoidable as a fraudulent transfer. From this it follows that the "Second Transfer" was ineffective and could not produce the result intended. As stated in the case of *In re Blitstein,* 105 B.R. 133 (Bankr.S.D.Fla.1989), the fact that the property transferred was entireties property at the time of the transfer did not insulate the transfer where the transfer to the entireties type of ownership was itself fraudulent. The contention of the Debtor that the Second Transfer was supported by adequate consideration because he received a property of equal value to that which he transferred to his wife, i.e. the interest in the Amoco property, furnishes hardly any solace to the Debtor and would not cleanse the transfer especially in light of his open admission that it was done to protect the properties from his individual creditors.

**Count V** is an action under Code section 550 to recover property whose transfer has been avoided or the value of such property

pursuant to § 550. Having concluded that both the First and The Second Transfers were fraudulent under Florida Law the Trustee may avoid and set the aside the transfers pursuant to § 544(b).

■ This leaves for consideration the Trustee's challenge to the Debtor's right to claim as exempt their residence claimed as his homestead located at 515 Serendipity Drive, Naples, Florida, and cash value in his Northwestern Mutual Life and a Provident Mutual Life insurance policies. It is the Trustee's contention that these properties were acquired by the Debtor by using the cash proceeds obtained from the sale of the Amoco property which was admittedly not exempt.

■ It is well established law that it is the objecting party's burden to prove, by a preponderance of the evidence, that the Debtor is not entitled to the exemption claimed. *In re Ehnle,* 124 B.R. 361 (Bankr.M.D.Fla.1991); *In re Barlock,* 121 B.R. 13 (Bankr.N.D.Ohio 1990). Once the objecting party has made a prima facie showing, the burden shifts to the Debtor to prove his entitlement to the exemption. *In re Welch,* 115 B.R. 374 (Bankr. M.D.Fla.1990).

■ This Court considered the issue of the challenge of the exemption claim in this case in the past and has held that the conversion of non-exempt property into exempt property should be permitted, but only within certain limits. Thus, a debtor's claim to exemptions may be denied upon a showing by extrinsic evidence that the debtor converted non-exempt property into exempt property with the specific intent to defraud his creditors. *In re Snape,* 166 B.R. 184, 187 (Bankr.M.D.Fla. 1994). The majority of the cases which considered the effect of conversion of non-exempt property into exempt property did not involve the Debtor's homestead, but either tangible or intangible property which are exempted by Fla.Stat. 222. *In re Schwarb,* 150 B.R. 470 (Bankr.M.D.Fla.1992); *In re Mackey,* 158 B.R. 509 (Bankr.M.D.Fla.1993); *In re Swecker,* 157 B.R. 694 (Bankr.M.D.Fla. 1993).

The exemption under consideration is a right established by Art. X, Section 4(a) of the Florida Constitution which provides:

### (1) *HOMESTEAD EXEMPTION*

There shall be exempt from forced sale under process of any court and no judgment, decree or execution shall be a lien thereon, except for payment of taxes, and assessment thereon, obligations contracted for the purchase, improvement or repair thereof or obligation contracted for the house, field or other labor performed on the realty, the following property owned by a natural person.

This provision which shields the homestead from the claims of creditors contains only three exceptions, none of which include the conversion of non-exempt property to a homestead protected by the Constitution. In the case of *Butterworth v. Caggiano,* 605 So.2d 56, 61 (Fla.1992) the Supreme Court of this State held that "Florida courts have consistently held that the homestead exemption in Article X, Section 4 must be liberally construed" and the three exceptions must be strictly construed. Forfeitures proceeding, which was involved in *Caggiano,* was not included in the exceptions because they are not mentioned either expressly or by reasonable implication in the three exceptions that are expressly stated. There is no question that homestead exemption also fails to provide an exception for real property which has been acquired for the sole and express purpose of defeating claims of creditors. As the District Court held in a recent decision *Bank of Leumi Trust Company of New York v. Milton Lang and Elena Lang and Mea Investments,* 9 Fla. Weekly Fed D. 259, 260 (U.S.Distr.Ct.S.D.Fla. Sept. 22, 1995) there is nothing in a recent case decided by the Supreme Court in *Palm Beach Savings and Loan Association v. Fishbein,* 619 So.2d 267 (Fla.1993) which overruled *Caggiano.* In *Fishbein* the husband obtained a loan from the Savings and Loan by forging his wife's signature and used the loan proceeds to pay off $930,000 in mortgages encumbering the property. It is evident that *Fishbein* stands only for the proposition that where non-exempt funds which were obtained fraudulently are used to acquire a homestead or to pay off a mortgage on the homestead the homestead is not immune from the claim of the defrauded creditor. See *Common Law Equity Defeats Florida's Homestead Exemption* by Greta K. Kolcon, Fla. B.J. Nov. 1994, at 56. The cases which considered the imposition of an equitable lien on the homestead uniformly limited the imposition to fact patterns where proceeds derived by fraud or reprehensible conduct were used to invest in, purchase or improve the homestead, e.g. *Jones v. Carpenter,* 106 So. 127, 130 (Fla.1925); *La Mar v. Lechlider,* 135 Fla. 703, 185 So. 833 (1939); *Ryskind v. Robinson,* 302 So.2d 427, 428 (Fla. 4th DCA 1974).

In the present instance there is no contention let alone evidence that the Debtor used fraudulently obtained funds to acquire the homestead. The homestead was acquired by the Debtor with the proceeds he obtained from the sale of the Amoco property which he owned and obtained as the result of the "Second Transfer." The fact that the evidence may support the conclusion that he purchased the homestead with the specific intention to place the funds obtained from the Amoco sale out of the reach of his creditors is of no consequence under the teaching of the Supreme Court of this State. See *Caggiano, supra.*

■ This leaves for consideration the Debtor's right to claim the exemption of the cash value of the two life insurance policies he purchased with the funds obtained from the sale of the Amoco property. Even a cursory comparison between the homestead exemption created by the Florida Constitution and the exemption created by Statute concerning annuities leaves no doubt there is one significant distinction and difference. This is that the protection granted to homestead is a constitutionally guaranteed right and lost only if the three specific and expressly stated exceptions are present. On the other hand, the exemption created for annuities is a creature of the Legislature, it has no constitutional protection, and therefore, may be subject to other exceptions, specifically an exception relating to the fraudulent transfer of non-exempt property into exempt property. In this connection it should be pointed out that Fla.Stat. § 222.14

is part of the Chapter which also includes Fla.Stat. § 222.30. This is a recent amendment which became effective October 1, 1993. This Statute provides that any conversion of non-exempt assets into exempt assets is fraudulent if it was made with the intent to hinder, delay or defraud a creditor. While it is true that the Statute technically does not apply to the transaction under consideration, i.e. the purchase of the annuities, it has been stated that the enactment of Fla.Stat. § 222.30 did little to alter the existing law and it was designed merely to codify a long line of authorities eliminating any doubt there may have been as to the law. See *Is Homestead Subject to the Statute of Fraudulent Asset Conversions?,* by David E. Peterson, et al., Fla. B.J. Dec. 1994, at 15.

The transaction under consideration involves the sale by the Debtor of the Amoco property and purchase of homestead and, the repayment of loans against the cash value of two life insurance policies, one with Northwestern Mutual Life in the amount of $14,-279.25 and the other with Provident Mutual Life Insurance in the amount of $37,348.54. At first blush one might conclude that these were legitimate transactions since there is nothing in this record to indicate that at the time they took place there were already collection pressures exerted against the Debtor by creditors either informally or through legal proceedings. The fact remains, however, that both notes payable to Mr. and Mrs. Cameron and to Mr. and Mrs. Cochrane, were fully matured and became due on October 5, 1992.

In sum, the claim of homestead exemption is allowed because under Florida Law, the Miller's are entitled to the protection provided by the Homestead Exemption, even if their purpose of converting the proceeds obtained from the sale of the Amoco property was used to hinder or delay creditors. This Court is satisfied that the evidence shows the Trustee's did establish with the requisite degree of proof that the Debtor converted non-exempt property to exempt property with the specific intent to hinder, delay, or defraud his creditors concerning the use of the proceeds from the Amoco property, to pay off the Debtor's loans against the cash sur-

render value of the policies in question, and the objection should be sustained. In view of the foregoing, this Court is satisfied that to the extent that non-exempt proceeds from the sale of the Amoco property were used to increase the cash value of the life insurance policies, the Debtor is not entitled to the claimed exemptions of: (1) the cash value of his Northwestern Mutual Life Insurance Policy to the extent of $14,279.25, and (2) the cash value of the Mutual Life Insurance Policy to the extent of $37,348.54.

A separate final Judgment will be entered in accordance with the foregoing.