**In re Michael S. STATNER, Debtor.**

**John BARBEE, Trustee, Plaintiff,**

**v.**

**Michael S. STATNER and Susan G. Statner f/k/a Susan Bosco, Defendants.**

**Bankruptcy No. 97–20946–BKC–RBR.**

**Adversary No. 97–0590–BKC–RBR–A.**

United States Bankruptcy Court, S.D. Florida, Broward Division.

Aug. 18, 1997.

Thomas L. Abrams, Shapiro & Abrams, Fort Lauderdale, FL, for debtor.

John L. Walsh, Patricia A. Dzikowski, P.A., Lauderhill, FL, for trustee.

John Barbee, Fort Lauderdale, FL, Chapter 7 Trustee.

### MEMORANDUM OPINION AND ORDER (I) DENYING AGREED MOTION FOR RECONSIDERATION OF ORDER EXTENDING TIME FOR THE TRUSTEE TO OBJECT TO THE DEBTOR'S CLAIMED EXEMPTIONS: AND (II) GRANTING SUMMARY JUDGMENT AS TO COUNTS V AND VI OF ADVERSARY COMPLAINT

RAYMOND B. RAY, Bankruptcy Judge.

This matter came before the Court for hearing on July 24, 1997, upon the Motion for Summary Judgment as to Counts V and VI of the Adversary Complaint filed by Defendant/Debtor, Michael S. Statner ("STATNER") on June 26, 1997, and upon STATNER's Agreed Motion for Reconsideration of Order Extending Time for the Trustee to Object to the Debtor's Claimed Exemptions or Alternatively to Vacate Order (the "Motion for Reconsideration"). The Court, having reviewed the Motions and the court file, having considered the arguments of counsel, and being otherwise duly advised in the premises, makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

In October 1994, STATNER purchased real property located at 11972 Glenmore Drive in Coral Springs, Florida for a purchase price of $235,000 and obtained a mortgage from Crossland Mortgage Corporation for $135,000. STATNER and his wife have lived at the Glenmore Drive property since the property was purchased. The mortgage was subsequently assigned by Crossland Mortgage Corporation to G.E. Capital.

In late 1995, STATNER's business, Microline Computer Centers, Inc., encountered financial problems. STATNER was a guarantor on several notes relating to the business and he likewise encountered financial problems. In February 1996, STATNER liquidated mutual funds which he had held since November 1991 and deposited such funds into a joint account with his wife. STATNER also received $99,000 in tax refunds in April 1996 which he also deposited into the joint account. On April 7, 1996, STATNER paid G.E. Capital $101,646.16 in partial satisfaction of the mortgage on his home and on May 7, 1996, he paid an additional $34,253.86 in full satisfaction of the mortgage. STATNER allegedly utilized the remainder of the funds to further invest in the business, pay creditors, and for his family's living expenses.

For the purpose of the Motion for Summary Judgment, the parties stipulated that STATNER utilized non-exempt assets to pay down the mortgage.[1] The parties further stipulated and it is undisputed that all funds utilized to pay off the home mortgage were from STATNER's own mutual funds and STATNER's tax refund and were not fraudulently or improperly obtained from a creditor.

---

1. This court is not determining nor is it at issue whether STATNER intended to hinder, delay or defraud his creditors by transferring allegedly non-exempt assets to an exempt asset. This factual issue will be resolved at trial on the Trustee's objection to STATNER's discharge alleged in Count IV of the Complaint.

STATNER filed his voluntary petition under Chapter 7 of the U.S. Bankruptcy Code on February 18, 1997. The § 341 Meeting of Creditors was held on April 3, 1997. On May 5, 1997, the last date to file objections to STATNER's claimed exemptions, the Trustee filed an *Ex Parte* Motion for Extension of Time to Object to STATNER's Claimed Exemptions to which STATNER objected. On May 12, 1997, this Court entered an Order granting the Trustee's Motion. The Debtor's Motion for Reconsideration followed.

The Plaintiff filed this Adversary within the extended time allotted by the Court. In Count V of the Complaint, the Trustee objects to STATNER's claimed exemption of his homestead pursuant to Article X, § 4 of the Florida Constitution. Count VI seeks imposition of an equitable lien on the claimed homestead property.

### CONCLUSIONS OF LAW

STATNER moves for Summary Judgment on the following two separate and distinct grounds: (1) pursuant to Federal Rule of Bankruptcy Procedure 4003(b), this Court does not have jurisdiction to enter an order extending the time period for objecting to exemptions subsequent to the expiration of the 30–day period, even if a Motion for Extension of Time is filed prior to the expiration of the 30–day period; and (2) pursuant to Article X, § 4(a) of the Florida Constitution, STATNER's homestead exemption should be upheld and an equitable lien may not be placed on the homestead property. Each of these issues shall be addressed in turn below.

### The Court has Jurisdiction to Extend the Time Period for Objecting to Exemptions

Federal Rule of Bankruptcy Procedure 4003(b) provides as follows:

> The trustee or any creditor may file objections to the list of property claimed as exempt within 30 days after the conclusion of the meeting of creditors.. unless, within such period, further time is granted by the court.

The Debtor interprets Rule 4003(b) to require two things: (1) the Trustee making a timely motion for an extension of time to file objections to exemptions; and (2) the Court entering an order allowing such extension within the 30 days following the 341 meeting of creditors. It is the Debtor's position that, even if a trustee timely files a motion for extension of time, if the motion is not granted within the prescribed 30 day time period, the Court loses jurisdiction to grant such relief. This Court disagrees.

In *In re Williams*, 124 B.R. 864 (Bankr. N.D.Fla.1991), the Bankruptcy Court for the Northern District of Florida addressed this precise question. In that case, the court considered the practicalities of the debtor's interpretation of 4003(b) and concluded that requiring the court to act within the 30 day period would be impractical and could result in the filing of numerous unnecessary motions for extensions of time by trustees immediately following the meeting the creditors. *Id.* at 866. Accordingly, the Bankruptcy Court held that it had the jurisdiction to grant the trustee's timely filed motion.

The same concerns were addressed by Judge Contie in his dissenting opinion in *In re Laurain*, 113 F.3d 595 (6th Cir.1997). In *Laurain*, the majority of the Court held that a Bankruptcy Court must rule on a 4003(b) motion within the prescribed 30 day period. While the Court recognized the due process concerns implicated by such a narrow reading of Rule 4003(b), the Court stated that trustees were nevertheless protected because they could seek expedited consideration of their motions.

In his dissenting opinion, Judge Contie first looked to the history of Federal Rule of Criminal Procedure 35(b) which provided:

> The court may reduce a sentence within 120 days after the sentence is imposed, or within 120 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 120 days after entry of any order or judgment of the Supreme Court denying review of, or having the effect of upholding, a judgment of conviction.

Congress eventually amended Rule 35(b) after numerous courts narrowly construed the rule, holding that judges were required to act within 120 days after which jurisdiction was lost. Congress clarified the rule to clearly state that a motion was timely if made within 120 days, and that the court had a reasonable time thereafter within which to determine the motion.

Judge Contie also looked to the Ninth Circuit opinion in *In re Southwest Aircraft Servs., Inc.,* 831 F.2d 848 (9th Cir.1987) wherein a debtor made a timely motion for an extension of time within which to assume or reject a commercial lease, but the bankruptcy court did not consider the motion until after the relevant 60 day time period lapsed. *See,* 11 U.S.C. § 365(d)(4). The Bankruptcy Court held that the lease was automatically deemed rejected when the 60 day time period expired, and the bankruptcy appellate panel affirmed.

On appeal to the Ninth Circuit, the Court of Appeals found that such a strict interpretation of § 365(d)(4) "would produce fortuitous and inequitable results." *Southwest Aircraft,* 831 F.2d at 853. The Court of Appeals reasoned that it could not have been Congress' intention to interfere with the normal operation of the courts, and found that an interpretation of § 365(d)(4) that allowed courts to consider timely filed motions "strikes the balance between creditor protection and debtor relief that Congress intended, and is eminently reasonable, fair and sensible." *Id.*

Finally, Judge Contie looked to the practical implications of a strict application of Rule 4003(b) "such as an ill or vacationing bankruptcy judge who is unable to act on a timely-filed motion within the 30–day period ... or a motion that is filed on the thirtieth day, minutes after the bankruptcy judge has gone home ... " and concluded that Congress did not intend the "nonsensical" interpretation adopted by the majority of the court. *Laurain,* 113 F.3d at 602.

The Court has carefully considered the *Laurain* opinion, as well as the other opinions in which the strict interpretation of Rule 4003(b) was adopted, *See, In re Brayshaw,* 912 F.2d 1255 (10th Cir.1990) and *In re*

*Stoulig,* 45 F.3d 957 (5th Cir.1995), and declines to apply the strict interpretation of Rule 4003(b) urged by the Debtor. Rather, the court adopts the opinion of Judge Killian in *Williams,* and the reasoning of Judge Contie in his dissenting opinion in *Laurain,* and holds that the Court has the authority to grant a timely filed motion for extension of time to file objections to a debtor's claim of exemption. To hold otherwise would be to create an undue hardship on both trustees and the Court. Accordingly, the Debtor's Motion for Reconsideration is denied, and summary judgment shall not be granted on this basis.

### *The Debtor's Homestead Exemption Shall Not Be Impaired*

Although this Court finds Plaintiff's objections to STATNER's claimed homestead exemption to be timely, based upon the undisputed facts and applicable law, the homestead exemption must be upheld. The issue of whether a Debtor's homestead exemption is protected by Article X, § 4 of the Florida Constitution where the Debtor has utilized non-exempt funds not procured by fraud or improper conduct to purchase, improve or invest in a homestead property has been ruled upon by this Court in two prior opinions, *In re Lane,* 190 B.R. 125 (Bankr. S.D.Fla.1995) and *In re Popek,* 188 B.R. 701 (Bankr.S.D.Fla.1995), wherein the Court followed the ruling of the District Court for the Southern District of Florida in *Bank Leumi Trust Co. of New York v. Milton Lang and Elena Lang and MEA Inv.,* 898 F.Supp. 883 (S.D.Fla.1995). There have been no amendments to the Florida Constitution since these rulings, nor has there been any new interpretation of Article X, § 4 by the Florida Supreme Court.

Article X, § 4 of the Florida Constitution provides in pertinent part:

(a) There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed

on the realty, the following property owned by a natural person:

(1) a homestead....

In interpreting this provision, the Florida Supreme Court has stated that the homestead protection afforded by the Florida Constitution is to be liberally construed. For example, in *Butterworth v. Caggiano,* 605 So.2d 56 (Fla.1992), the State of Florida sought forfeiture of the defendant's residence under the Florida RICO Act. The State argued that "a forfeiture is not a 'forced sale' and that the homestead exemption was not intended to apply outside the debtor context...." *Id.* at 58. The Florida Supreme Court disagreed, stating that the "terms of the Constitution are to be interpreted in their most usual and obvious meaning...." *Id.* at 58. Since the language of the section refers to "forced sales" and not "forced sales arising from debts," the Court determined that forfeitures are not excluded from the protection afforded homestead property. *Id.* at 60. The Court then concluded that the only exceptions to the homestead exemption are those specifically enumerated in the Florida Constitution, explaining that "[t]he Florida homestead provision clearly contains no exception for criminal activity. Neither the legislature nor this Court has the power to create one." *Id.* at 60. *See also, Olesky v. Nicholas,* 82 So.2d 510, 513 (Fla.1955) (claim of homestead is good against judgment grounded on malicious tort). The Court also recognized that those cases wherein equitable liens were allowed to be placed on homestead property involved the use of "illicit" proceeds to purchase or acquire the subject property. *Id.* at 61.

Consistent therewith, the District Court for the Southern District of Florida in *Bank Leumi* declined to place an equitable lien on a Debtor's homestead, stating that "the homestead exemption does not contain an exception for real property which is acquired in the state of Florida for the sole purpose of defeating the claims of out-of-state creditors." *Bank Leumi,* 898 F.Supp. at 887. The District Court held that an equitable lien could not be placed on the defendants' homestead notwithstanding the fact that the objecting creditor loaned $1,800,000 to the defendant and the defendants ultimately converted over $500,000 in non-exempt assets to purchase a Florida homestead to fraudulently avoid claims of the creditors. The court held that because the plaintiff had not offered evidence to show, nor did it contend, that the defendants initially borrowed the $1,800,000 with the intent to put the money into the Florida house, the defendants could not be denied their homestead exemption. Id. at 888.

■ In this case, Plaintiff has not offered evidence to show, nor does he contend, that the funds used by STATNER to pay off his mortgage were fraudulently or improperly procured. In fact, it is undisputed that the funds were from tax refunds and proceeds of mutual funds which STATNER owned for several years before he had any financial problems.

This Court has also previously addressed the argument raised by the Trustee that the homestead exemption must not be applied to make it an instrument of fraud or unjust enrichment. In cases where Florida courts have imposed equitable liens on the basis of fraudulent, illegal, or improper conduct, those seeking homestead protection had fraudulently or improperly procured funds and then sought to defeat the claims of those to whom monies were due by using the money to invest in, purchase, or improve a homestead. *Popek,* 188 B.R. at 703. (homestead upheld where funds used to obtain property not traced to objecting creditor). *See also Bank Leumi,* 898 F.Supp. at 888.

This Court in *Popek,* as well as the District Court in *Bank Leumi,* found inapposite the cases relied upon by Plaintiff at oral argument such as *Jones. v. Carpenter,* 90 Fla. 407, 106 So. 127 (1925), and *Palm Beach Sav. and Loan Ass'n v. Fishbein,* 619 So.2d 267 (Fla.1993), as such cases involved the use of fraudulently acquired funds to improve a homestead or pay off a mortgage. For example, in *Jones v. Carpenter,* the defendant tortiously converted corporate funds which he utilized to make improvements on his recently-acquired home. The Florida Supreme Court permitted the corporation's creditors to place an equitable lien on the property under such circumstances.

In *Palm Beach Sav. and Loan Ass'n v. Fishbein,* a husband borrowed $1.2 million from a bank and secured the loan with a mortgage on his home. He then used $930,-000 of the proceeds of the loan to satisfy the existing mortgages on his homestead. The bank subsequently discovered that Mr. Fishbein had forged his wife's signature on loan documents. The bank contended that because its loan proceeds were used to satisfy prior liens on the homestead, it stood in the shoes of the prior lienors on the homestead. Ultimately, the court awarded the bank an equitable lien on the homestead property in the amount of $930,000.

As stated by Judge Hoeveler in *Bank Leumi, Fishbein* "applies to a narrow range of circumstances in which a creditor steps into the shoes of a predecessor creditor who could have availed himself of an exception to the homestead exemption." *Bank Leumi,* 898 F.Supp. at 888. It has no applicability to this case where it is undisputed STATNER did not borrow any funds to pay off his mortgage, nor were any of the funds fraudulently or improperly obtained from a creditor. *See, Caggiano,* 605 So.2d at 61.

Plaintiff's reliance on *In re Diamond,* 196 B.R. 635 (Bankr.S.D.Fla.1996) is also inapposite to this case. In *Diamond,* the Court held that because the creditor, First Union, and the debtor stipulated that a contract existed pre-petition which was intended to place a lien on the homestead, an equitable lien was justified. The Court held that fraud need not be proven because there was no dispute that First Union loaned money to the Debtor and the parties intended their lien be placed on the homestead in exchange for such loan. *Diamond* has no applicability to the facts of this case. Likewise, *In re Grocki,* 147 B.R. 274 (Bankr.S.D.Fla.1992), cited in Plaintiff's complaint, is factually dissimilar. In *Grocki,* there was a specific finding that the Debtor had fraudulently taken funds from the objecting creditor and utilized such funds to reduce his mortgage on homestead property.

**2.** This ruling is limited to the homestead and is not applicable to any other alleged objections to

 Pursuant to the cases discussed above, the exceptions to the homestead exemption provided by the Florida Constitution must be strictly construed. Unless the facts are such that they fall within one of the three exceptions specifically provided by Article X, § 4(a), this court cannot deny the instant Debtor his homestead. As this Court held in *Popek* and *Lane,* even assuming the purpose of STATNER's actions were to defeat the claims of his creditors, this Court is without the power to create additional exceptions to protections provided by the Florida Constitution. However, as noted in *In re Clements,* 194 B.R. 923 (Bankr.M.D.Fla.1996), creditors are not without their rights to pursue other remedies such as objecting to discharge, seeking dismissal of the case, or filing avoidance actions. *Id.* at 927.

Accordingly, Defendant, MICHAEL S. STATNER, is entitled to Summary Judgment as a matter of law as to Counts V and VI of the Adversary Complaint, and STATNER's homestead exemption is upheld.[2]